# EXHIBIT A

1-10-03

**STATE OF FLORIDA**
**BOARD OF PHARMACY**

Final Order No. DOH-03-0343-FoF-MQA
FILED DATE - 4/15/03
Department of Health
By: _____
Deputy Agency Clerk

DEPARTMENT OF HEALTH,

    Petitioner,

vs.

RX NETWORK OF SOUTH
FLORIDA, LLC.,

    Respondent.
_____/

DEPARTMENT OF HEALTH,

    Petitioner,

vs.

GWYNETH GORDON, R. PH.,

    Respondent.
_____/

DOAH CASE NOS. 2002-2976
                 2002-2977

Division of Administrative Hearings
**FILED**
Date 7/6/04

DOAH CASE NOS. 2002-2978PL
                 2002-2980PL

## FINAL ORDER

These consolidated cases came on to be heard before the Florida Board of Pharmacy (Board) at its scheduled meeting in Orlando, Florida on March 6, 2003 and at its teleconference meeting on March 31, 2003. At those meetings, the Board reviewed the Recommended Order entered by ALJ Daniel Manry on January 10, 2003. The Board also addressed the Exceptions to that Order filed by the Petitioner, Department of Health, (Department) and the Joint Response thereto filed by the Respondents, Rx Network

EXHIBIT A

of South Florida, LLC (Rx Network), and Gwyneth Gordon, R. PH. (Gordon).[1]

In addition, the Board ruled on the Department's written Motion to file Amended Exceptions and its oral motion for leave to file second amended exceptions. Finally, the Board ruled on the Department's Motion to Assess Costs in Accordance with Section 456.072(4) and Rx Network's and Gordon's Objections thereto

### PRELIMINARY MATTERS

1. The Department's Motion for Leave to File Amended Exceptions is GRANTED without objection. However, the oral motion for leave to file second amended exceptions is DENIED.[2]

### THE EXCEPTIONS

2. The Department has filed two interrelated exceptions to the ALJ's proposed conclusions of law.[3] The gravamen of the

---

[1] The Board has reviewed the entire record and heard arguments of counsel.

[2] The proposed Second Amended Exceptions included a requested increased penalty for Rx Network and a suggested modification of the statutory provision which Rx Network was found by the ALJ to have violated.

[3] The Department has also included in its exceptions what it terms the "Pleading Issue" (Amended Exceptions at 24-25). In the exceptions and at the hearing, the Department has recognized that the matters raised in the "Pleading Issue" are not "...conclusions of law over which [the Board] has substantive jurisdiction..." (Section 120.57(1)(1), Fla. Stat.,) and as such the ALJ's conclusions on the matters raised in the "Pleading Issue" cannot be "reject[ed] or modif[ied]" by the Board, Barfield v. Department of Health, 805 So.2d 1008, 1010-1011(Fla. 1st DCA 2001), Deep Lagoon Boat Club, Ltd. v. Sheridan, 784 So.2d

EXHIBIT A

Department's exceptions is that the ALJ failed to find that Gordon's activities failed to meet the standard of practice required of a prescription department manager.[4] The Department argues (Amended Exceptions at 10-20) that Gordon, as the prescription department manager for Rx Network's pharmacy, was responsible for the violations of law found by the ALJ and attributed to Rx Network. The Department cites to Section 465.018, Fla. Stat., to a Board rule (Rule 64B16-27.104(5), Fla. Admin. Code), and to the record as support for its position.[5]

3. Rx Network and Gordon respond in three ways. First, and most tellingly, they note that Gordon was never charged with violating Section 465.018 or Rule 64B16-27.104(5). Second, they assert that 465.018 imposes no standard of practice upon pharmacists but is directed only to pharmacy permittees. Finally, they claim that to make Gordon responsible for acts

---

1140(Fla. 2nd DCA 2001). The Board therefore expresses no opinion on this matter.
[4]The Department has filed no exceptions that challenge the ALJ's proposed findings of fact.
[5]**465.018 Community pharmacies; permits.-**
Any person desiring a permit to operate a community pharmacy shall apply to the department. If the board office certifies that the application complies with the laws of the state and the rules of the board governing pharmacies, the department shall issue the permit. No permit shall be issued unless a licensed pharmacist is designated as the prescription department manager responsible for maintaining all drug records, providing for the security of the prescription department, and following such other rules as relate to the practice of the profession of pharmacy. The permittee and the newly designated prescription

EXHIBIT A

other than those which evidenced "personal misconduct by the licensee" would be an improper imposition of "vicarious liability" upon her, citing to Pic N' Save Cent. Florida, Inc. v. Department of Business Regulation, Div. of Alcoholic Beverages and Tobacco, 601 So.2d 245, 250 (Fla. 1st DCA 1992).

4. The Board agrees with the first of Rx Network's and Gordon's contentions. While pleadings in administrative proceedings may not be subject to the strictures of criminal pleadings, it is plain that due process requires that a licensee subject to a penal proceeding wherein which her license is at risk must be put on notice of the provisions of law or rule which she is charged with violating. Here the Department essentially seeks to find Gordon in violation of a statute and rule which were never charged in the various administrative complaints, which were not mentioned in the prehearing stipulation, and which were not discussed in the Department's proposed recommended order. While the Board largely agrees with the Department's analysis of the standard of practice placed upon a prescription department manager and also agrees that the facts as found by the ALJ seem to make a strong prima facie case that Gordon failed to live up to those standards, it cannot find Gordon in violation of a charge not plead.

---

department manager shall notify the department within 10 days of any change in prescription department manager.

EXHIBIT A

5. That being said, however, the Board rejects Rx Network's and Gordon's remaining arguments. The Board has long held that Section 465.018 (and its predecessors) impose special duties upon pharmacists designated as prescription department managers.

6. For example, in Board of Pharmacy v Bowers, DOAH Case # 79-682, Final Order, 2 FALR 44-A (1979) the Board revoked a pharmacist for violating the requirements of Section 465.21, Fla. Stat.,(1979) (the predecessor to Section 465.018). Similarly, in Department of Health v Williams, DOAH Case # 00-315, Final Order, 23 FALR 3939(2001) the Board adopted a recommended order which found as a matter of fact that prescription department managers are "responsible for compliance by all...employees,...with Florida Statutes, administrative rules, and federal regulations governing pharmacy...in the operation of a community pharmacy business...."

7. Indeed, Section 465.018 not only requires a permittee to name a pharmacist as prescription department manager but delineates the responsibilities of the manager. For the legislature to have required the naming of a person who would have overall responsibility for the professional practice of pharmacy in a community pharmacy and then preclude any

EXHIBIT A

discipline being imposed upon a pharmacist who fails to live up to those responsibilities would be absurd.[6]

8. The Board also rejects Rx Network's and Gordon's assertion that to hold the pharmacist designated as prescription department manager responsible for violations of pharmacy rules and statutes would make that pharmacist "vicariously liable" for the acts of others. A prescription department manager is statutorily "responsible" for maintaining drug records, providing for security of the prescription department and following other relevant rules relating to the practice of pharmacy in the prescription department of the permittee. As such, the prescription department manager has overall supervisory authority and thus concomitant responsibility over the activities of all of the professional and other employees in the prescription department. Failure to competently exercise that authority breaches the prescription department manager's statutory duty and subjects her to discipline.

9. However, in light of the fact that the Department did not charge Gordon with violating the statute or rule governing

---

[6]In the same vein, the Board is unable to understand the legal basis for the ALJ's factual finding (Finding of Fact #56) of the existence of "managers" other than Gordon. Section 465.018 requires a community pharmacy to name a prescription department manager and to notify the Board of any change within 10 days. Since there was evidently no such notice to the Board from Rx Network or Gordon throughout the time frames at issue in these

EXHIBIT A

the practice of a prescription department manager, the Board rejects the Department's exceptions.

### ORDER ON THE ALJ'S RECOMMENDED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

10. The Board hereby accepts the ALJ's recommended Findings of Fact insofar as they are supported by competent substantial evidence. The Board also accepts the ALJ's recommended Conclusions of Law with the following exceptions and comments.

11. The Board rejects the ALJ's discussion (Conclusions of Law #s 211-216) to the extent that the Recommended Order implies that the Board of Pharmacy is without authority to implement standards governing internet pharmacy practice. Since the Board was not a party to the proceedings at DOAH, any implication that the Board's rulemaking ability does not extend to enacting such a rule is mere dicta and, in the Board opinion, erroneous.

12. Indeed, much of the ALJ's discussion is directed to his conclusion that the Department failed at hearing to "demonstrate" that an unwritten Board Statement and proposed rule satisfies the elements of Sections 120.57(1)(e)2a-g, Fla. Stat., so as to allow its use at hearing to prove violations on

---

proceedings, it is plain that none of these other pharmacists was the prescription department manager for Rx Network.

EXHIBIT A

the part of Rx Network and Gordon. While the Board does not dispute the ALJ's conclusions on the Department's proofs at hearing, it must note that any failures of proof or persuasion by the Department in endeavoring to meet the burdens placed upon it by Sections 120.57(1)(e)2a-g, Fla. Stat, are failures of the Department in this hearing and can have no impact upon any present or future rulemaking on the part of the Board.

13. The Board agrees with the ALJ (Conclusions of Law #217-219) that the Board Statement and subsequent proposed rule in and of themselves did not provide adequate notice to Rx Network and Gordon of any general standard of professional or business practice for pharmacies and pharmacists filling prescriptions over the internet.

14. The Board also accepts the ALJ's determination (Findings of Fact # 55) that the evidence presented was less than clear and convincing that Gordon personally dispensed the medications at issue. When, as it must be, the inquiry is limited only to the testimony and exhibits presented at the hearing, this finding is based upon competent substantial evidence.

15. However, as provided in Rule 64B16-28.140(3)(d), Fla. Admin. Code, all pharmacists are required to sign a daily log of dispensed medications, which must be generated within 72 hours of the date in question. Each pharmacist who dispensed drugs on

that date must sign the log within seven days of the dispensing act. The signature is verification of the data contained therein, including the name of the pharmacist who dispensed each medication, and reflects that pharmacist's professional act of dispensing.

16. It is the Board's position that the clear meaning of Rule 64B16-28.140(3)(d) is that the existence of a dispensing log signed by a pharmacist constitutes prima facie evidence of that pharmacist's professional acts of dispensing on the date in question. Absent some credible and compelling explanation by the pharmacist to the contrary, the log itself is clear and convincing evidence of a pharmacist's personal responsibility for the dispensing of a particular prescription.

17. Lastly, the Board must respond to the ALJ's various findings (for example, Findings of Fact #s 9, 39) and conclusions (for example, Conclusions of Law #s 191-3, 201, 220) relating to the interrelationship of the practice of pharmacy and the rules and statutes governing the practice of other health care providers. While it is self-evident that rules and statutes governing the practice of medicine, osteopathic medicine, nursing and other health care professions do not govern the activities of pharmacists practicing pharmacy, it is an overbroad conclusion to hold or even intimate that those regulations do not impact upon pharmacy practice.

18. Pharmacists are charged by the provisions of Chapter 465 to dispense medications only upon presentation of a valid prescription and after a determination that the dispensing act is in accordance with the professional norms and standards and is in the best interests of the patient. As such, pharmacists must be aware of the regulations governing those health care practitioners who prescribe drugs so that a pharmacist can make a reasoned decision as to whether the professional standards for legitimate dispensing have been met; see, for example, Rule 64B8-9.012, Standards for the Prescription of Obesity Drugs, and Rule 64B15-14.004, Standards for the Prescription of Obesity Drugs.

19. The Board has therefore adopted rules that reflect positions taken by the Boards of Medicine and Osteopathic Medicine as to what standards are to be used in determining whether certain prescriptions have been written for a legitimate medical purpose (see Rule 64B16-27.831, Fla. Admin. Code) and has applied those standards to pharmacy practice. Other provisions of law, see Sections 893.02(20) and 893.04, Fla. Stat., place similar demands upon pharmacists. In addition, a pharmacist is statutorily charged with the duty of reporting a physician to the Department who the pharmacist knows has violated the physician's practice act, Section 465.016(1)(o), Fla. Stat.

EXHIBIT A

20. Thus, to the extent that the ALJ's Recommended Order implies that pharmacists need not be aware of or take into consideration the rules and regulations governing those health care providers authorized to prescribe medicinal drugs when engaging in the professional act of dispensing, such an implication is in error.

## **PENALTY**

21. The Board therefore accepts the ALJ's Recommendation that Rx Network be found in violation of Section 465.016(1)(i) for 24 instances of dispensing excessive quantities of controlled substances. The Board further accepts the ALJ's recommendation that the evidence adduced at the hearing results in a finding that Gordon is not guilty of the charges levied in the two administrative complaints against her.

22. Pursuant to the ALJ's recommendation, the Board places Rx Network on PROBATION for a period of ONE (1) YEAR under the following terms and conditions:

> A. Rx Network shall not violate any of the law and rules governing pharmacy permittees.
>
> B. In order that the ALJ's recommended condition of probation be carried out, the Board imposes upon Rx Network the requirement that its prescription department manager must attend 12 hours of continuing

EXHIBIT A

education on pharmacy laws and rules. In addition Rx Network will be subjected to quarterly inspections by a pharmacy inspector approved by the Executive Director and board member, James B. Powers, R.Ph., and such inspections shall be at the expense of Rx Network.

Finally, Rx Network's Chief Executive Officer or president shall perform FIFTY (50) HOURS of community service.

23. The Board, however, finds that the monetary fine recommended by the ALJ ($24,000.00) is insufficient and is not in conformity with similar penalties imposed upon permittees who have evidenced multiple instances of improper dispensing. The ALJ, after properly noting that Rx Network on 24 instances had violated the applicable provision of Chapter 465,F.S. then imposed the minimum fine for each instance. In the past the Board has imposed a larger fine than the $1000.00 minimum if multiple instances of violations have been proven, see Department of Health v Meister, DOH Case #s 01-19170, 01-11797, Department of Health v. Correction Corporation of America, DOH Case # 97-04496. A FINE of $2,000.00 per instance ($48,000.00 total) is therefore warranted. The fine is due and owing within THIRTY (30) DAYS of the entry of this Order.

EXHIBIT A

## COSTS

24. The Board has reviewed the Department's motion to assess costs as provided in Section 456.072(4), Fla. Stat., the attachments to the motion, and the objections thereto, and has heard arguments of counsel. The Board GRANTS the motion limited to the Department's costs incurred in prosecuting the violations found against Rx Network which amount to $43,718.85.

25. The Board determines that, despite the ALJ's recommendation that the costs to Rx Network be limited only to the that portion "directly related to that part of the investigation and prosecution required to prove that Rx (sic) dispensed excessive quantities of controlled substances," such an apportionment is not possible here. The costs involved in prosecuting the violation against Rx Network found by the ALJ to be proven are inextricably intertwined with any putative costs relating to other charges brought in this case and thus are incapable of reasoned apportionment. The COSTS of $43,718.85 are due and owing within THIRTY (30) DAYS of the entry of this Order.

This Order shall become effective upon filing with the Clerk of the Department.

EXHIBIT A

DONE and ORDERED this 31st day of March, 2003.

*[signature]*

LUCY C. GEE
ACTING EXECUTIVE DIRECTOR

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Final Order has been mailed to Sean M. Ellsworth, Esq., Dresnick, Ellsworth & Felder, SunTrust Plaza, Suite 701, 201 Alhambra Circle, Coral Gables, FL 33134-5108; Arthur J. England, Jr., Esq., Greenberg Traurig, P.A., 1221 Bricknell Avenue, Miami, FL 33131 and Deborah B. Loucks, Esquire, Assistant General Counsel, Department of Health, Prosecution Services Unit, 4052 Bald Cypress Way, Bin C-64, Tallahassee, Florida, this 15th day of April, 2003.

*[signature]* Susan K. Hunt

EXHIBIT A