# EXHIBIT B



2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

2003 WL 124675 (Fla.Div.Admin.Hrgs.)

Division of Administrative Hearings
State of Florida
DEPARTMENT OF HEALTH, BOARD OF
PHARMACY, Petitioner
v.
**RX NETWORK** OF SOUTH FLORIDA, LLC,
Respondent

Case Nos. 02-2976, 02-2977
DEPARTMENT OF HEALTH, BOARD OF
PHARMACY, Petitioner
v.
GWYNETH M. GORDON, R.PH., Respondent

Case Nos. 02-2978PL, 02-2980PL
January 2003

## RECOMMENDED ORDER

Administrative Law Judge (ALJ) Daniel Manry conducted the administrative hearing of this case from September 30 through October 3, 2002, in Fort Lauderdale, Florida, on behalf of the Division of Administrative Hearings (DOAH).

APPEARANCES

For Petitioner:

Rosanna M. Catalano, Esquire

David Herman, Esquire

John Raymaker, Esquire

Bureau of Practitioner Regulation - Legal
Department of Health

4052 Bald Cypress Way, Bin C-65

Tallahassee, Florida 32399-3265

For Respondents:

Sean M. Ellsworth, Esquire

Mark A. Dresnick, Esquire

Monica L. Felder, Esquire

Dresnick, Ellsworth & Felder, P.A.

201 Alhambra Circle

Sun Trust Plaza, Suite 701

Coral Gables, Florida 33134

## STATEMENT OF THE ISSUES

The issues are whether Respondents committed the acts or omissions alleged in four administrative complaints, and, if so, what penalty should be imposed against Respondents' licenses.

## PRELIMINARY STATEMENT

On November 19, 2001, Petitioner filed separate Amended Administrative Complaints (Amended Complaints) against Respondent, **Rx Network** of South Florida, LLC,(Rx), and Respondent, Gwyneth Gordon, R.Ph. (Gordon). Respondents requested administrative hearings in both cases. Petitioner did not send the requests to DOAH until July 26, 2002, approximately 228 days after Respondents submitted their requests.

On June 18, 2002, Petitioner filed separate administrative complaints against Rx and Gordon (Administrative Complaints). Respondents requested administrative hearings, and Petitioner referred the requests to DOAH in a timely manner. On August 12, 2002, ALJ Larry J. Sartin consolidated the four

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)                                                                 Page 2
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

administrative complaints into this proceeding.

At the administrative hearing, Petitioner presented the testimony of nine witnesses and submitted 71 exhibits for admission into evidence. Respondents presented the testimony of one witness and submitted two exhibits for admission into evidence. The identity of the witnesses and exhibits, and any attendant rulings, are set forth in the six-volume Transcript of the hearing filed on November 5, 2002. Petitioner and Respondents timely filed their proposed recommended orders (PROs) on November 15, 2002.

The four administrative complaints in this proceeding allege facts and charge violations covering a period from April 6, 2001, through June 17, 2002 (the covered period). Statutes applicable to the covered period were enacted in 2000 and 2001. The parties have not apprised the ALJ of any substantive changes in the relevant statutes during the covered period. For convenience, the Recommended Order refers to chapters and statutes published in Florida Statutes (2000) and (2001) simply as "Florida Statutes." References to rules are to rules promulgated in the Florida Administrative Code in effect for the covered period and recognized in the record pursuant to a request for Official Recognition.

A pervasive issue in this proceeding is whether the four administrative complaints allege facts with sufficient specificity. The issue shaped the form and length of the administrative hearing through persistent objections to evidence that Respondents argued was not relevant to any facts alleged in the four administrative complaints. The issue now shapes the form and length of this Recommended Order because the ALJ has concluded that the trier of fact must limit findings to facts alleged in the four administrative complaints.

The ALJ functions as the trier of fact and in a quasi-judicial capacity, in relevant part, by ruling on objections to evidence and by making conclusions of law. During the hearing, the ALJ overruled many objections to evidence but has concluded, based on case law discussed at some length in the Conclusions of Law, that the trier of fact cannot consider evidence of facts not alleged in the four administrative complaints.

The facts alleged in the Amended Complaints have been relatively easy to identify. The Amended Complaints are based on an inspection of Rx that Petitioner conducted on April 6, 2001. Each Amended Complaint alleges facts in four paragraphs and charges a single violation in a fifth paragraph.

The facts alleged in the Administrative Complaints have been more difficult for the trier of fact to ascertain. The difficulty encountered by the trier of fact has shaped the form and length of the Recommended Order.

The Administrative Complaints are based on inspections conducted on October 18 and December 6, 2001, and on January 31, 2002; as well as allegations from two individuals identified in the record as T.M. and G.W. The Administrative Complaint against Rx is a 30-page document containing 90 numbered paragraphs and 24 subparagraphs. The Administrative Complaint against Gordon is 29 pages long and contains 88 numbered paragraphs and 23 subparagraphs.

Each Administrative Complaint alleges substantially similar facts in paragraphs 1 through 65 (hereinafter 1-65). The alleged facts are intended to support the violations charged in paragraphs 66 through 88 or 90 (66-88 or 90) and organized into counts labeled Counts One through Twelve. Petitioner concedes it failed to prove the violations charged in Count Thirteen.

Neither of the Administrative Complaints differentiates which grounds alleged in paragraphs 1-65 support the charges in each count. Rather, the complaints state that all of the facts alleged in paragraphs 1-65 form the grounds for each count. Some paragraphs numbered 1-65 contain charges that Respondents violated statutes or rules referred to in the paragraph or allege facts that arguably support more than one charge in the various counts. Other paragraphs allege a method of proof without alleging a fact that the method seeks to prove.

The order of proof at the hearing did not clarify the uncertainty engendered by the Administrative Complaints. The PRO from Petitioner did not correlate proposed findings, factual allegations in the Administrative Complaints, and the charged violations. The PRO concedes some charges but does not identify the factual allegations eliminated by the concessions.

The concessions by Petitioner in its PRO leave several statutes and rules at issue in the Recommended Order. The statutes and rules that remain at issue are: Sections 465.003(8); 465.014; 465.016(1)(e), (i), (n), and (r); 465.023(1)(c); 465.035; 465.185; 499.005(1) and (2); 499.006(3); Rules 64B16-27.101, 64B16-27.400(6)(a), 64B16-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)                                                                Page 3
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

27.410, 64B16-27.420, 64B16-27.430, 64B16-27.800(2), 64B16-27.810, and 64B16-28.130 (the remaining charges).

The trier of fact has attempted to make findings in a manner that the parties and a court can review without being left to "grope in the dark" in order to ascertain which grounds alleged in paragraphs 1-65 have been found to be true. See e.g., Irvine v. Duval County Planning Commission, 466 So. 2d 357, 366 (Fla. 1st DCA 1985)(dissenting opinion of Judge Zehmer). To that end, the trier of fact has made findings in the same order that Petitioner alleged facts in paragraphs 1 through 4 of the Amended Complaints and paragraphs 1-65 in the Administrative Complaints. The only deviation occurs in findings pertaining to allegations in paragraph 14.

The findings of fact attempt to elucidate the basis of each finding and the weight accorded the relevant evidence. An explanation of the terms used for that purpose might assist the parties and a reviewing court in understanding how the trier of fact applied the clear and convincing standard of proof to evidence relevant to each alleged fact.

Competent substantial evidence of an alleged fact must be clear and convincing for the trier of fact to find that the alleged fact is true. As the arbiter of credibility, the trier of fact must resolve any conflicts and inconsistencies in the evidence by considering the substance and foundation of expert opinions, attempting to resolve inconsistencies among witnesses and exhibits, and ultimately weighing the evidence.

A finding that Petitioner did not prove an alleged fact does not require the trier of fact to find a contrary fact to be true. For example, a finding that Petitioner did not prove that a prescription is invalid does not require the trier of fact to find that Respondents proved the prescription is valid. The trier of fact need only find that evidence of the alleged invalidity is less than clear and convincing.

A statement that evidence is less than clear and convincing may have one of several meanings. It may mean that Petitioner proved an alleged fact by only a preponderance of evidence or less; that relevant evidence is not credible or persuasive; that Petitioner failed to submit any competent and substantial evidence; that Respondents proved the contrary fact by a preponderance of evidence; or that some evidence or argument by Respondents created a hesitance in the mind of the trier of fact that prevents

a firm belief that the alleged fact is true.

Belief, proof, and evidence are not synonymous terms. The terms are functionally related, however, and their interplay determines whether evidence relevant to an alleged fact is clear and convincing.

'Belief' is a subjective condition resulting from proof.... It is a conviction of the truth of a proposition, existing in the mind, and induced by... proof.... Proof is the result or effect of evidence, while evidence is the medium or means by which a fact is proved or disproved.... Proof is the perfection of evidence; for without evidence there is no proof, although there may be evidence which does not amount to proof....Black's Law Dictionary, 1094 (West 5th ed. 1979).

## FINDINGS OF FACT

1. Petitioner proved the grounds alleged in paragraphs 1 through 3 of each Amended Complaint and the grounds alleged in paragraphs 1 through 5 of each Administrative Complaint. Petitioner is the state agency responsible for regulating the practice of pharmacy in Florida pursuant to Section 20.43 and Chapters 456 and 465. Rx and Gordon are each licensed in Florida, respectively, as a community pharmacy and pharmacist pursuant to license numbers PH 17718 and PS 27618.

2. Rx is a community pharmacy located at 5400 South University Drive, Suite 107, Davie, Florida 33328. Gordon is the pharmacy manager.

3. Rx operates an Internet pharmacy. Rx fills prescriptions received over the Internet and dispenses the prescribed medications.

4. A website company identified in the record as USAPrescriptions.com (USAP) obtains personal information from individuals responding to USAP advertisements on the Internet. USAP transmits the patient information to physicians who prescribe medication for the individuals and transmit the prescriptions and patient information to Rx by e-mail.

5. Rx prints a written record of the electronically transmitted prescription, but the written record of the prescription is not the actual prescription. Rx then enters the patient information into its computer system; fills the prescription; labels the medication in accordance with the requirements of Section 893.04(1)(e); obtains a written confirmation of the prescription from the physician; and dispenses the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)                                         Page 4
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

medication to the patient by private courier. Petitioner conducted on-site inspections of Rx on April 6 and October 18, 2001.

6. Petitioner proved the grounds alleged in paragraph 4(b) of the Amended Complaints. Many of the medications in evidence are controlled substances within the meaning of Section 893.03. None of the controlled substances are Schedule I or Schedule II drugs defined in Section 893.03(1) and (2). Most of the medications are Schedule III, IV, or V drugs defined in Section 893.03(3)-(5). The remaining medications are legend drugs that are not scheduled by statute.

7. Most of the medications in evidence are controlled substances identified in the record as obesity drugs and marketed under the brand names Adipex, Bontril, Didrex, Ionamin, Meridia, Phentermine, and Tenuate. Other medications include Celebrex, Ultram, Valtrex, Viagra, Xenical, and Zyban.

8. Petitioner failed to prove the allegation in subparagraph 4(a) of the Amended Complaints that Respondents filled prescriptions written by out-of-state physicians who prescribed medication based on Internet questionnaires. Rx and Gordon do not fill "written" prescriptions. Respondents fill electronic prescriptions that physicians transmit by e-mail. The electronic prescriptions are transmitted by "other means of communication" authorized in Section 893.02(20). Respondents reduce each electronic prescription to a written record referred to in Section 893.04(1)(a).

9. The evidence is not clear and convincing that physicians prescribe based on Internet questionnaires. None of the prescribing physicians testified.

10. The content of the Internet questionnaire is not established by clear and convincing evidence. The prescribing physicians provide Respondents with patient profiles that include medical information for each patient.

11. Evidence that the patient profiles are an inadequate basis for the prescriptions is less than clear and convincing. Petitioner's experts relied on the adequacy of the patient profiles, in relevant part, to opine that Respondents failed to properly consult patient profiles before dispensing obesity drugs. Evidence that patient profiles were an adequate source of medical information to consult before dispensing drugs is inconsistent with allegations that the patient profiles received from the prescribing

physicians were an inadequate basis for the prescription or that the Internet questionnaires did not include sufficient information. Inconsistent evidence and allegations are not clear and convincing.

12. The allegation in paragraph 4(a) that an "out-of-state physician" transmitted the referenced prescription is not material to the statutory mandate for Respondents to determine the validity of the prescription. The statute requires a pharmacist to determine the validity of the prescription only when the prescribing physician is "licensed" in a state other than Florida. The physical location of the physician is immaterial. The trier of fact cannot infer that Petitioner intended to allege a material fact. The fact must be alleged in the plain language of the Amended Complaint.

13. It may be reasonable for the fact-finder to infer that the physician is licensed in the state where he or she is located, but such an inference is less than clear and convincing. The ALJ has ruled that any ambiguity in the factual allegation must be construed in favor of the licensee because this is a license discipline proceeding.

14. The evidence is less than clear and convincing that Gordon was present at Rx on April 6, 2001. The investigator's testimony that he interviewed Gordon on April 6, 2001, is not persuasive. That testimony conflicts with evidence that the investigator customarily documents interviews in his investigative report and did not document an interview with Gordon on April 6, 2001. Such inconsistent evidence is less than clear and convincing. Even if Gordon were found to be present during the inspection, the evidence does not show how long she was present or the nature and scope of her personal conduct concerning the alleged acts or omissions.

15. The evidence is less than clear and convincing that the alleged acts or omissions were caused by misconduct on the part of Rx. The alleged acts or omissions are limited to April 6, 2001. Evidence relevant to the inspection conducted on April 6, 2001, consists primarily of the testimony of one inspector and two exhibits. The evidence is insufficient to show that unidentified employees of Rx engaged in the alleged acts or omissions in a persistent and practiced manner. The evidence is insufficient to support an inference that Rx is vicariously responsible for the alleged acts or omissions of its employees on April 6, 2001.

16. Paragraph 4(c) in the Amended Complaints alleges that the prescriptions filled by Respondents

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)                                                                                      Page 5
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

were not valid because there was no patient-physician relationship upon which to base a treatment plan or "to justify prescribing medications." The evidence does not establish standards applicable to Respondents. The investigator's testimony makes clear that the alleged grounds are based on a rule promulgated by the Board of Medicine that is applicable only to physicians licensed in Florida. The ALJ has ruled in the Conclusions of Law that Petitioner has no jurisdiction to discipline Respondents for violating a rule applicable to physicians.

17. No further findings are made concerning the grounds alleged in the Amended Complaints. Paragraph five in the Amended Complaints charges a violation based on facts alleged in the preceding four paragraphs of the complaint. The remaining references in the Recommended Order to a "paragraph" refer to paragraphs in the Administrative Complaints.

18. Paragraph 5 alleges that the "inspection team observed" four technicians and one pharmacist dispensing medications on October 18, 2001, in violation of the maximum ratio of 3:1 prescribed in Section 465.014. The observations of the "inspection team" are a method of proof but, in this instance, include the fact sought to be proven.

19. On October 18, 2001, Gordon was the only pharmacist on duty during the inspection. Four other employees were present at the time, but the evidence is less than clear and convincing that all four employees were technicians. Two members of Petitioner's inspection team found that Respondents maintained the correct ratio. One member is a licensed pharmacist. A third member found the ratio to be improper. Such inconsistent evidence is less than clear and convincing.

20. As to paragraph 6, Petitioner proved that mislabeled drugs were present in the offices of Rx on October 18, 2001. The evidence is clear and convincing that a potentially dangerous pre-packaging procedure occurred on that day. The deficient procedure failed to properly label medications during the re-packaging process.

21. The evidence of personal misconduct by Gordon on October 18, 2001, is less than clear and convincing. Although Gordon was present during the inspection, there is little detailed evidence of her personal conduct.

22. The facts are similar for Rx. The evidence is less than clear and convincing that Rx directed its employees to commit the deficiencies or knew of the deficiencies. Uncontroverted admissions by Rx employees indicate they were instructed to use the deficient procedure to label vials. However, the evidence is insufficient to show that the instructions came personally from Gordon, the owners of Rx, or some other employee or manager.

23. The evidence does not support an inference by the trier of fact that Rx or Gordon is vicariously responsible for the deficiencies. The evidence is insufficient to show that the labeling deficiencies on October 18, 2001, were persistent and practiced. The allegation is limited to a specific day, and the inspection team was not in the offices of Rx all day.

24. The evidence established the standards required for Respondents to exercise due care. The medications were improperly labeled in vials loaded in bins prior to the time that an employee filled a specific prescription. The bins were labeled with the name of the medication and the number of pills. However, the vials did not contain a label stating the strength of the drug, dosage form, manufacturer's lot number or control number, and expiration date as required in Section 499.006(3) and Rule 64F-12.006(1). The standard of care is that the vials must be labeled with the requisite information before filling the vial rather than afterward.

25. The potential for harm from mislabeled drugs is great. It is unsafe and dangerous to keep unlabeled prescription vials containing medications. However, the evidence is not clear and convincing that any actual harm occurred.

26. No finding is made concerning the grounds alleged in paragraph 7. If the facts expressly alleged in paragraph seven were proven, those grounds would not prove any of the remaining charges.

27. Paragraph 7 alleges virtually every fact related to the misuse of a Kirby-Lester machine except that Respondents actually misused the machine by not cleaning it after counting one type of medication and before counting a different type of medication. The allegation is that contamination can occur if the machine is not cleaned between medications. Paragraph 7 does not allege that any member of the inspection team observed Respondents using the machine to count different medications without cleaning the machine between medications. The trier of fact cannot draw an inference that facts not expressly stated were intended to be alleged. The allegation must appear in the plain language of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

Page 6

paragraph.

28. Petitioner failed to prove the grounds alleged in paragraph 8. The evidence is less than clear and convincing that Respondents prepared, packaged, or held drugs under conditions that could contaminate the drugs with filth or render the drugs injurious to health.

29. The evidence is less than clear and convincing that the drugs and drug packaging material referred to in the allegation were part of the dispensing process. The materials were being held for return to the manufacturer. Petitioner submitted no evidence showing that Respondents used the empty vials or vial tops to package medications or that Respondents actually dispensed pills that had been dropped on the floor.

30. The evidence of Gordon's personal conduct concerning the alleged grounds is less than clear and convincing. The evidence does not show that the acts or omissions occurred in a persistent and practiced manner.

31. The evidence is less than clear and convincing that Rx operated an unsanitary, unsafe, or unclean pharmacy or that Gordon managed such a pharmacy. It is reasonable for a busy pharmacy to accumulate debris and clutter on the floor in the course of a busy day. Routine clutter does not render a pharmacy unsafe, unclean, or unsanitary.

32. Petitioner proved the allegation in paragraph 9 that unnamed employees at Rx received approximately 764 prescriptions on October 5, 2001, and that the prescriptions were not signed. Petitioner failed to prove that the prescriptions were written and required by law to be signed.

33. The unsigned documents are not prescriptions within the meaning of Section 893.02(20). They are the written record of prescriptions that are transmitted electronically over the Internet.

34. Paragraph 9 refers to Rule 64B8-9.012(4). That rule is promulgated by the Board of Medicine and applies to physicians. Respondents are not physicians.

35. Petitioner proved part of the grounds alleged in Paragraph 10 but failed to prove a material ground. No finding is made regarding the remaining ground.

36. Petitioner proved that Section 893.02(20) contains the provision quoted in paragraph 10. For reasons stated in paragraphs 9 through 11 of the Findings of Fact, evidence of the basis upon which the prescribing physicians ordered medications is less than clear and convincing.

37. No finding is made concerning the allegation that "many of these... controlled substances... were prescribed...." The prescribing physicians did not testify, and Respondents do not prescribe medications. Respondents fill prescriptions and dispense medications.

38. No finding is made concerning paragraph 11. Paragraph 11 does not allege that Respondents committed any specific act or omission. Paragraph 11 recites Section 465.003(14).

39. No finding is made concerning paragraphs 12 and 13. The grounds alleged in both paragraphs pertain to physicians rather than pharmacists.

40. In relevant part, paragraph 14 alleges:
    Accordingly, Respondent is dispensing obesity medications prescribed without benefit of a valid patient/physician relationship in violation of Section 465.016(1)(i).... For purposes of Section 465.016(1)(i)..., it shall be legally presumed that the... dispensing of... drugs in excessive or inappropriate quantities is not in... the course of the professional practice of pharmacy. Also, the practice constitutes violations of sections 894.04(1) and 893.02(20)... for dispensing controlled substances outside the course of the professional practice of pharmacy by failing to determine whether the prescriptions were issued pursuant to a valid patient/physician relationship, and by failing to determine that the drugs so ordered are considered necessary for the continuation of treatment of a chronic or recurrent illness. (emphasis supplied)

41. Paragraph 14 charges that Respondents violated the referenced statutes based on antecedent facts alleged in paragraphs 9 through 13 and incorporated by reference through terms such as "accordingly" and "the practice." Related counts in paragraphs 66-88 or 90 contain substantially similar charges based on facts alleged in paragraphs 1-65. The charges in paragraph 14 and related counts are read together to include relevant factual allegations in paragraphs 1-65.

42. Section 893.02(20), in relevant part, requires a pharmacist to determine whether prescriptions from a physician licensed in a state other than Florida are issued pursuant to a valid patient-physician

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

Page 7

relationship, are authentic, and are necessary for the continuation of treatment of a chronic or recurrent illness (the validity test). The terms of the validity test are susceptible to different interpretations.

43. The validity test could be construed to require a pharmacist to determine whether the physician considers the patient-physician relationship to be valid, the prescription authentic, and the drugs necessary. Alternatively, the validity test could require the pharmacist to substitute the pharmacist's judgment for that of the physician.

44. The ALJ has determined that any ambiguity in the terms of the validity test must be construed in favor of Respondents and against the imposition of discipline. The ALJ has also determined that a requirement for a pharmacist to substitute her or his judgment to determine the medical necessity of medication may, in some cases, require the licensee to practice medicine.

45. Respondents exercise reasonable care to ensure that the validity test has been satisfied, when applicable, by requiring the prescribing physician to sign a written verification of the prescriptions ordered by that physician. Respondents do not fill any prescription before Respondents receive a "site fill list" or "daily log" signed by the prescribing physician to verify the authenticity of the prescription, the validity of the patient-physician relationship, and the medical necessity of the medication.

46. If pharmacists were required to substitute their judgment for that of prescribing physicians, the standards for exercising that judgment are less than clear and convincing. The requirement for a licensee to determine the validity of the patient-physician relationship applies only if the physician is licensed in a state other than Florida. Standards used to determine the validity of a patient-physician relationship vary from state to state. Clear and convincing evidence does not indicate whether a Florida pharmacist must apply Florida law to make the necessary determination or must apply the law of the state where the prescribing physician is licensed.

47. Petitioner relies on an unwritten agency statement by the Board of Pharmacy to explicate the standards that pharmacists must use in determining the validity of a patient-physician relationship. The agency statement requires licensees to determine whether a prescribing physician, licensed in any state including Florida, has conducted an in-person examination of the patient prior to prescribing a medication. The agency statement holds that the absence of an in-person examination renders the prescription invalid. Findings pertaining to the agency statement are discussed further in the Conclusion of Law because continuity requires a simultaneous discussion of both findings of fact and conclusions of law.

48. The charge in paragraph 14 that Respondents dispense excessive or inappropriate quantities of legend drugs is equivalent to charges in Count Two against Rx and Count Four against Gordon. Facts relevant to those charges are alleged in paragraphs 9, 15, 16, 17, and 20 through 22 of the Administrative Complaints. Paragraphs 25, 26, and 29 in the Administrative Complaint against Rx allege additional relevant facts, as do paragraphs 26, 27, and 30 in the Administrative Complaint against Gordon.

49. In relevant part, paragraph 9 alleges that on October 5, 2001, Respondents received 764 prescriptions from three physicians identified in the record as Drs. Rosenkrantz, Rivera, and Thompson. Paragraphs 15 through 17 allege that two drugs marketed under the names Phentermine and Bontril are controlled substances that have a high potential for abuse. Respondents stipulated to paragraphs 15 through 17.

50. Paragraph 20 alleges that many of the controlled substances are for a three-months' supply per purchase. Paragraph 21 alleges that the PDR states that tolerance for the anorectic effect of many obesity drugs occurs after a "few weeks," and that the drug should be discontinued at that time rather than increased to overcome tolerance.

51. Paragraph 22 alleges that Respondents filled hundreds of prescriptions for obesity drugs each day included in the business practices described in paragraphs 1 through 21. The business practices described in paragraphs 1 through 21 are for the dates that occurred from October 5 through 18, 2001.

52. Paragraphs 25 and 26 pertaining to Rx, and paragraphs 26 and 27, pertaining to Gordon, allege that Petitioner's investigator obtained the written record of additional prescriptions when an employee for Rx produced the documents on October 24, 2001. Paragraph 29, pertaining to Rx, and paragraph 30, pertaining to Gordon, allege that the computer operated by Rx showed that Rx and its employees dispensed 17,410 tablets of Phentermine on December 5, 2001; and that a daily log dated September 4, 2001, showed that Rx employees received 300 prescriptions from Dr. Rivera.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

Page 8

53. The facts alleged to support the charges of dispensing excessive or inappropriate quantities of legend drugs involve dates from September 4 through December 6, 2001 (the relevant period). Within the relevant period, the enumerated paragraphs together allege that Rx and Gordon dispensed excessive and inappropriate quantities of legend drugs including: hundreds each day; 17,410 tablets on December 5, 2001; and 300 from Dr. Rivera on September 4, 2001. The relevant paragraphs also allege that many of the legend drugs were obesity drugs such as Bontril and Phentermine; and that many drugs were dispensed pursuant to prescriptions for 90 days' supply per purchase. The relevant paragraphs further allege methods of proof, including documents received on October 24, 2001, provisions of the PDR, and documents collected by the inspectors.

54. The evidence is less than clear and convincing that Gordon personally dispensed drugs during the relevant period. There is insufficient evidence, or allegations, to show when Gordon was present at the pharmacy, for how long, or if her duties required her to fill prescriptions and dispense drugs.

55. The evidence is less than clear and convincing that Gordon is vicariously responsible for drugs that others dispensed during the relevant period. Although the evidence is clear that drugs were dispensed in a persistent and practiced manner, there is insufficient evidence for the trier of fact to draw an inference that Gordon was vicariously responsible.

56. Petitioner did not prove that Gordon was the only manager during the relevant period. Paragraph 5 of the Administrative Complaints alleges that, on October 18, 2001, Gordon identified another person present at the pharmacy as the owner. The next allegations concerning Gordon's management control over pharmacy operations pertain to the inspection conducted on January 31, 2002. The allegations and

evidence are insufficient to differentiate the duties of Gordon and others with management control. The evidence is insufficient to show which days various managers were present, what specific duties each performed, and how the managers allocated management responsibilities among themselves. The evidence is less than clear and convincing that Gordon had any management control over those who dispensed medications during the relevant period.

57. There is no doubt that Rx dispensed large quantities of medication during the relevant period. Employees at Rx dispensed approximately 1,942 legend drugs during the relevant period. That is a practiced and persistent manner of dispensing drugs regardless of which employees dispensed the drugs.

58. Large quantities of drugs are not necessarily excessive or inappropriate quantities. Petitioner stipulated during the hearing that a determination of whether quantities are excessive or inappropriate must be made "per patient" and not by reference to the pharmacy.

59. The evidence of prescriptions filled by Rx consists of Petitioner's Exhibits 59, 62, 63, 76, 77, 87, 88, 90, 92, and 94 (P59, P62, etc.). The prescriptions were filled from January 11, 2001, through April 26, 2002. Prescriptions evidenced in P87, P88, and P92 are outside the relevant period. Of the remaining prescriptions, the prescriptions that are essential to the opinion of Petitioner's expert are set forth in P94. That exhibit consists of a Site Fill List, or daily log, maintained by Rx for the period from September 4 through October 10, 2001. Petitioner's expert identified 102 instances in P94 in which he opined that medications were dispensed to individual patients in excessive or inappropriate quantities.

60. The instances relied on by Petitioner's expert may be fairly summarized as follows:

| Item | Date | Patient | Drug | Dose/Quantity |
|------|------|---------|------|---------------|
| 1. | 9/20 | L.A. | Phentermine(P) | 30mg/30 |
| 2. | 9/20 | L.A. | P | 30mg/30 |
| 3. | 9/20 | L.W. | P | 30mg/90 |
| 4. | 9/20 | L.W. | Meridia (M) | 15mg/90 |
| 5. | 9/4 | K.Co. | Diethylpropion( | 75mg/90 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

DP)

| | | | | |
|------|-------|-------|-------------|-----------|
| 6. | 9/4 | K.Cu | P | 30mg/90 |
| 7. | 9/10 | A.J. | Adipex (A) | 37.5mg/90 |
| 8. | 9/10 | A.J. | Didrex (D) | 50mg/30 |
| 9. | 9/10 | A.J. | Adipex (A) | 37.5mg/90 |
| 10. | 9/10 | A.J. | Didrex (D) | 50mg/30 |
| 11. | 9/11 | D.B. | Bontril (B) | 105mg/90 |
| 12. | 10/2 | D.B. | B | 105mg/90 |
| 13. | 10/2 | K.Sg. | P | 15mg/90 |
| 14. | 10/1 | K.Sg. | P | 30mg/90 |
| 15. | 9/4 | I.To. | P | 30mg/30 |
| 16. | 9/26 | I.To. | P | 37.5mg/90 |
| 17. | 10/1 | I.Tr. | A | 37.5mg/90 |
| 18. | 10/5 | I.Tr. | A | 37.5mg/90 |
| 19. | 10/3 | I.Tr. | Celebrex | 200mg/50 |
| 20. | 10/5 | I.Tr. | Xenical | 120mg/270 |
| 21. | 9/10 | D.Ha. | A | 37.5mg/90 |
| 22. | 9/6 | D.Ha. | P | 30mg/90 |
| 23. | 10/10 | J.H. | M | 10mg/30 |
| 24. | 10/5 | J.H. | P | 30mg/90 |
| 25. | 9/6 | D.Ht. | D | 50mg/30 |
| 26. | 9/7 | D.Ht. | D | 30mg/30 |
| 27. | 9/28 | L.M. | Viagra | 100mg/30 |
| 28. | 9/28 | L.M. | Viagra | 100mg/30 |
| 29. | 9/5 | J.S. | P | 30mg/30 |
| 30. | 9/24 | J.S. | P | 30mg/30 |
| 31. | 10/1 | J.S. | P | 30mg/90 |
| 32. | 9/25 | Z.H. | P | 30mg/30 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)                                    Page 10
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

| 33. | 9/25 | Z.H. | P | 30mg/30 |
| 34. | 9/5 | D.I. | A | 37.5mg/30 |
| 35. | 9/6 | D.I. | A | 37.5mg/30 |
| 36. | 10/10 | L.Z. | D | 50mg/90 |
| 37. | 10/8 | L.Z. | P | 30mg/90 |
| 38. | 9/17 | T.W. | A | 37.5mg/30 |
| 39. | 9/14 | T.W. | P | 37.5mg/90 |
| 40. | 9/20 | L.A. | P | 30mg/30 |
| 41. | 9/20 | L.A. | P | 30mg/30 |
| 42. | 9/17 | A.E. | P | 30mg/30 |
| 43. | 9/24 | A.E. | P | 30mg/90 |
| 44. | 9/27 | D.P. | A | 37.5mg/90 |
| 45. | 9/26 | D.P. | P | 30mg/90 |
| 46. | 10/5 | K.Sh. | A | 37.5mg/30 |
| 47. | 10/5 | K.Sh. | P | 37.5mg/30 |
| 48. | 10/5 | P.S. | P | 30mg/90 |
| 49. | 9/27 | P.S. | P | 37.5mg/30 |
| 50. | 9/10 | M.F. | P | 30mg/90 |
| 51. | 9/10 | M.F. | P | 30mg/90 |
| 52. | 9/24 | A.G. | A | 37.5mg/30 |
| 53. | 9/6 | A.G. | B | 105mg/30 |
| 54. | 9/4 | B.A. | DP | 75mg/30 |
| 55. | 9/4 | B.A. | DP | 75mg/30 |
| 56. | 9/17 | M.S. | P | 37.5mg/90 |
| 57. | 9/20 | M.S. | P | 37.5mg/90 |
| 58. | 10/9 | V.S. | P | 30mg/90 |
| 59. | 9/24 | V.S. | P | 37.5mg/90 |
| 60. | 9/17 | D.Cd. | P | 37.5mg/90 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

| 61. | 9/4 | D.Cf. | P | 37.5/90 |
| 62. | 9/26 | J.Ws. | P | 30mg/90 |
| 63. | 9/27 | J.Ws. | P | 37.5mg/90 |
| 64. | 9/25 | R.R. | B | 105mg/30 |
| 65. | 9/24 | R.R. | B | 105mg/90 |
| 66. | 9/10 | A.J. | A | 37.5mg/90 |
| 67. | 9/10 | A.J. | D | 50mg/30 |
| 68. | 9/28 | K.J. | P | 30mg/90 |
| 69. | 10/1 | K.J. | P | 30mg/90 |
| 70. | 9/12 | S.F. | P | 30mg/30 |
| 71. | 9/12 | S.F. | P | 30mg/30 |
| 72. | 10/3 | S.F. | P | 30mg/30 |
| 73. | 10/3 | D.M. | A | 37.5mg/30 |
| 74. | 10/5 | D.M. | A | 37.5mg/30 |
| 75. | 9/14 | P.G. | DP | 75mg/30 |
| 76. | 9/14 | P.G. | DP | 75mg/90 |
| 77. | 9/17 | M.I. | P | 30mg/30 |
| 78. | 9/21 | M.I. | P | 30mg/90 |
| 79. | 9/19 | T.H. | Viagra | 100mg/20 |
| 80. | 9/18 | T.H. | Viagra | 100mg/30 |
| 81. | 9/12 | C.C. | Ionamin (I) | 30mg/90 |
| 82. | 9/5 | C.C. | P | 37.5mg/30 |
| 83. | 9/21 | M.P. | D | 50mg/30 |
| 84. | 9/25 | M.P. | D | 50mg/90 |
| 85. | 9/4 | K.H. | A | 37.5mg/30 |
| 86. | 9/28 | K.H. | A | 37.5mg/30 |
| 87. | 10/10 | K.H. | A | 37.5mg/30 |
| 88. | 10/3 | A.C. | Viagra | 100mg/10 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| 89. | 10/3 | A.C. | Viagra | 100mg/10 |
| 90. | 9/24 | K.K. | P | 37.5mg/30 |
| 91. | 10/2 | K.K. | P | 37.5mg/90 |
| 92. | 9/6 | J.Wi. | A | 37.5mg/30 |
| 93. | 9/19 | J.Wi. | D | 37.5mg/30 |
| 94. | 9/5 | T.W. | A | 37.5mg/30 |
| 95. | 9/19 | T.W. | A | 37.5mg/30 |
| 96. | 10/8 | T.W. | A | 37.5mg/30 |
| 97. | 9/28 | A.M. | P | 30mg/30 |
| 98. | 10/9 | A.M. | P | 30mg/30 |
| 99. | 9/17 | S.K. | Viagra | 100mg/10 |
| 100. | 9/17 | S.K. | Viagra | 100mg/10 |
| 101. | 10/5 | C.K. | Ultram | 50mg/30 |
| 102. | 10/8 | C.K. | ULtram | 50mg/90 |

61. The appropriateness of a quantity of medication is determined by reference to the medical profile of a particular patient. The evidence is less than clear and convincing that the quantities of dispensed medication were inappropriate.

62. Evidence and allegations concerning patient profiles are inconsistent. Petitioner alleges in its complaints that information in patient profiles provided an insufficient basis for the prescribing physician to order medication. However, witnesses for Petitioner opined that Respondents deviated from the professional practice of pharmacy by failing to consult the profiles. The necessary implication is that the profiles contained sufficient medical information for Respondents to consult before dispensing medication. There would be no rational reason to consult an invalid patient profile. Other evidence suggests the patient profiles contain insufficient medical information. The apparent inconsistency was confusing, contributed to a hesitance in the mind of the trier of fact that either proposition was true, and eroded the credibility of expert testimony that Rx employees dispensed medication in inappropriate quantities to particular patients.

63. A medication is dispensed in an excessive quantity if the quantity dispensed exceeds the maximum recommended quantity for the medication. Petitioner cited

no statute or rule that defines the term "quantity." The plain and ordinary meaning of the "quantity" of a drug is the "measurable [or] countable... property" of the drug. The American Heritage Dictionary of the English Language, 1432 (4th ed. 2000). The trier of fact measured the total medication dispensed pursuant to a single prescription by the total milligrams of medication dispensed.

64. Rx employees dispensed obesity drugs evidenced in P94 in the form of pills. The total medication dispensed by pill is a mathematical product equal to the strength of each pill multiplied by the number of pills, including refills. The evidence is less than clear and convincing that prescriptions in P94 included refills.

65. Petitioner cited no statute or rule that identifies the maximum recommended quantity for the obesity drugs at issue. Rather, a combination of expert testimony and the maximum strengths evidenced in P94 establish a maximum recommended quantity for the obesity drugs at issue. The trier of fact determined that obesity drugs in P94 were dispensed in excessive quantities if the total medication dispensed to a patient within 90 days exceeded the total medication in 90 pills, at the maximum strength for each pill, taken once a day for 90 days (the 90-day standard). Evidence of which obesity drugs have a lower quantity standard is less than clear and convincing. It is clear, however, that any of the obesity drugs in P94

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

Page 13

are dispensed in excessive quantities if the total dispensed medication exceeds the total medication in the 90-day standard.

66. The evidence is less than clear and convincing that the total dispensed medication was excessive in item numbers 1, 2, 7 through 10, 40, 41, 66, and 67. Items 1, 2, 40, and 41 may be duplicates as may be the case for items 8, 10, and 67; and 7, 9, and 66. The trier of fact has sufficient doubt as to whether the opinions based on the enumerated items are true.

67. The evidence is less than clear and convincing that the total dispensed medication was excessive in items 19, 20, 27, 28, 79, 80, 88, 89, and 99 through 102. Those items show that the medications are not obesity drugs. Evidence of the quantity standards for legend drugs other than obesity drugs is less than clear and convincing.

68. The evidence is less than clear and convincing that total dispensed medication was excessive in connection with items 5, 6, 25 and 26, 32 through 35, 46 and 47, 52 through 55, 60, 61, 70 through 74, 85 through 87, and 92 through 98. Patient names in items 5 and 6 and 60 and 61 are different. Where patient names are the same for two prescriptions, the total medication dispensed pursuant to both prescriptions does not exceed the 90-day standard.

69. The evidence is clear and convincing that the total dispensed obesity medication exceeded the 90-day standard in several instances. Those instances are evidenced in items 3 and 4, 11 through 18, 21 through 24, 29 through 31, 36 through 39, 42 through 45, 48 through 51, 56 through 59, 62 through 65, 68 and 69, 75 through 78, 81 through 84, and 90 and 91.

70. Neither the strength of each pill nor the number of pills dispensed pursuant to a single prescription caused total dispensed medication to exceed the total medication in the 90-day standard. Total dispensed medication generally exceeded total medication in the 90-day standard when employees dispensed an obesity drug to a patient pursuant to a second prescription within 90 days of the first. In items 29 through 31, however, the excess occurred when obesity drugs were dispensed pursuant to a third prescription in item 31 within 90 days of the first two prescriptions in items 29 and 30. Therefore, the 49 items enumerated in the preceding paragraph evidence only 24 instances of excessive quantities of obesity drugs.

71. The total dispensed medication exceeded the total medication in the 90-day standard in three types of fact patterns. In one fact pattern, Rx employees dispensed the same brand name obesity drug to a patient at the maximum strength pursuant to two prescriptions within 90 days. In item 11, for example, Rx employees dispensed

90 pills of Bontril at the maximum strength of 105 milligrams per pill. In item 12, they dispensed the same quantity approximately 22 days later. The total dispensed medication within 90 days is equal to the product of 180 pills multiplied by 105 milligrams, or 18,900 milligrams. The total medication in the 90-day standard is 90 pills at 105 milligrams, or 9,450 milligrams. The excessive quantity is the excess of the dispensed medication (18,900) over the medication in the 90-day standard (9,450). The excessive quantity evidenced in items 11 and 12 is 9,450 milligrams. By similar calculations, the excessive quantity in items 56 and 57 is 3,375 milligrams. The excessive quantity in items 64 and 65 is 3,150 milligrams. In items 75 and 76, 83 and 84, and 90 and 91, the excessive quantities are 2,250, 1,500, and 1,125 milligrams, respectively.

72. In the second fact pattern, Rx employees dispensed the same brand name obesity drug to a patient at less than the maximum strength pursuant to two or more prescriptions within 90 days. In item 14, for example, Rx employees dispensed 90 pills of Phentermine at a strength of 30 milligrams per pill. In item 13, they dispensed 90 pills of the same drug the next day at 15 milligrams per pill. The total medication dispensed within 90 days is equal to the sum of the total milligrams dispensed in each instance, or 4,050 milligrams. The total medication in the 90-day standard is 90 pills at 37.5 milligrams, or 3,375 milligrams. The excessive quantity is the excess of the dispensed medication (4,050) over the medication in the 90-day standard (3,375). The excessive quantity evidenced in items 13 and 14 is 675 milligrams. By similar calculations, the excessive quantities in items 15 and 16, 29 through 31, 42 and 43, 48 and 49, 50 and 51, 58 and 59, 62 and 63, 68 and 69, and 77 and 78, respectively, are 900, 1,125, 225, 450, 2,025, 2,700, 2,700, 2,025, and 225 milligrams.

73. In the third fact pattern, Rx employees dispensed different brand name obesity drugs in different strengths pursuant to two prescriptions within 90 days. In item 3, for example, Rx employees dispensed 90 pills of Phentermine at 30 milligrams per pill. In item 4, they dispensed 90 pills of Meridia on the same day at 15 milligrams per pill. The total medication dispensed within 90 days is equal to the sum of the milligrams dispensed in each instance, or 4,050 milligrams. The total medication in the 90-day standard is 90 pills at 37.5 milligrams, or 3,375 milligrams. The excessive quantity is the excess of the dispensed medication (4,050) over the medication in the 90-day standard (3,375), or 675 milligrams. By similar calculations, the excessive quantities in items 21 through 24, 36 through 39, 44 and 45, and 80 and 81, respectively, are 2,975, 1,575, 2,700, and 450 milligrams.

74. Rx employees dispensed obesity drugs in the three

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

fact patterns just discussed in an aggregate excessive quantity of 42,275 milligrams. The average excessive quantity for each of the 24 instances found in P94 is 1,761 milligrams. The average excess quantity correlates to a 90-day excess of approximately 17 pills at a maximum strength of 105 milligrams, 23 pills at 75 milligrams, 35 pills at 50 milligrams, 47 pills at 37.5 milligrams, and 117 pills at 15 milligrams.

75. The ALJ has concluded that Section 465.016(1)(i) creates a legal presumption that the excessive quantities of obesity drugs dispensed by Rx employees were not dispensed in the course of the practice of pharmacy. Rx did not rebut the statutory presumption with persuasive evidence that explains the quantities of medications dispensed or rebuts the quantity standards in evidence.

76. Respondents' expert relied on substantially the same evidence as that relied on by Petitioner's expert and opined that Respondents dispensed medication in accordance with the professional practice of pharmacy. However, that opinion was an ultimate conclusion that was not fact specific and did not cast doubt on the details that gave rise to the statutory presumption. That opinion was not persuasive.

77. Rx argues that Petitioner did not show that the prescriptions were actually filled, did not sufficiently identify the patients, and did not show that the patients actually received the medications. Those arguments are neither credible nor persuasive. They do not create a hesitance in the mind of the trier of fact concerning the details supporting the statutory presumption. Information in P94 is part of the QS1 system.

78. The instances of excessive quantities of medications provide a sufficient basis for the trier of fact to find that Rx is vicariously liable for Rx employees who dispensed obesity drugs in excessive quantities in the 24 instances evidenced in P94. The instances are not isolated events. During the 26 days evidenced in P94, the 24 instances of excessive quantities occurred, on average, almost once a day. That evidence shows that Rx employees dispensed excessive quantities of obesity drugs in a persistent and practiced manner.

79. Rx did not require its employees to comply with the standard of conduct evidenced in expert testimony. In the absence of an adequate alternative, Rx employees must personally review site fill lists to ensure that quantities are not excessive. Rx employees do not personally review site fill lists. Rather, Rx permits its employees to rely on the QS1 computer system for that and other purposes.

80. Reliance on the QS1 computer system was reasonable and was made in good faith. The QS1 is a computer system commonly utilized by pharmacies. The system maintains inventory, patient profiles, and patient addresses and phone numbers. The QS1 system enables Rx to capture and monitor patient profiles in dispensing medications. The evidence is less than clear and convincing that the information in the patient profiles is inaccurate or inadequate.

81. Rx employees enter a prescription into the QS1 system and then retrieve the prescribed medication from inventory. If the medication has not been pre-packed, the employee counts the medication and places it in a vial. If the medication has been pre-packed, Rx labels the medication.

82. The QS1 system alerts Rx employees to any particular problems that a patient may have as a result of the prescribed medication. If an Rx employee receives an alert, she or he reviews the patient profile and resolves the problem.

83. Once the prescription is prepared for dispensing, Rx pharmacists compare the prescription with the vial label to ensure accuracy. Rx employees then place the medication in an envelope for shipping but do not actually ship the medication until they receive a signed copy of the daily log from the prescribing physician verifying that the physician has not prescribed medication in excessive quantities. The daily log is not a prescription but is an extra step taken by Rx to ensure the accuracy of the order for medication.

84. The QS1 system performed its purpose well when measured by statistical standards. There are approximately 1,942 prescriptions listed in P94. Only 24 of those were for excessive quantities of obesity drugs. The QS1 system achieved an error rate of approximately 1.23 percent. That rate of error, however, produced excessive quantities of medication almost once a day for 26 days.

85. Rx relied on the QS1 system in filling approximately 154,773 prescriptions between October 19, 2001, and April 26, 2002. If the QS1 system were to maintain an error rate of 1.23 percent during that period, the mathematical probability is that Rx would have dispensed excessive quantities of medication in 1,903 instances over approximately 190 days for an average of approximately 10 instances a day. If the excess quantity in each instance were equal to 1,761 milligrams, according to the average determined in paragraph 76 of the Findings of Fact, Rx would have dispensed 17,644 milligrams of excess medication each day and 3,352,429 milligrams of excess medication in 190 days.

86. An error rate of 1.23 percent represents a significant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

Page 15

potential for harm. However, the evidence of actual harm is less than clear and convincing.

87. Rx dispensed excessive quantities of obesity drugs in 24 instances evidenced in P94. Rx dispensed the medication irrespective of whether the patients actually received it. Receipt is a relevant inquiry to determine harm to an identified recipient. Receipt does not determine whether Rx employees dispensed obesity drugs from the pharmacy.

88. The grounds alleged in paragraphs 15 through 17 are not disputed. Paragraph 18 alleges, in relevant part:

The concept of dispensing... scheduled drugs by permitting them to be specifically requested and 'ordered' over the internet is a potentially dangerous method of allowing... medications to be 'taken on the user's own initiative rather than on the basis of professional medical advice....' Dispensing controlled... drugs in this manner by Respondent[s] runs contrary to the spirit, intent, and purpose of chapter 893 with regard to protecting the safety of the public. (emphasis supplied)

89. No findings are made concerning the grounds alleged in paragraph 18. The trier of fact cannot discern what specific acts or omissions paragraph 18 alleges. Paragraph 18 implies that Respondents somehow transformed a "concept" into a "method" but does not allege any specific acts or omissions by which Respondents effectuated the transformation. Paragraph 18 is devoid of patient names, dates, specific transactions, details, and other allegations of essential facts.

90. Several allegations in paragraphs 19 through 21 concern the "Physician's Desk Reference" (PDR). Other than those findings already made, the trier of fact is uncertain what Petitioner intends to allege in paragraphs 19 through 21.

91. The PDR is a method of proving a fact not alleged. Evidence of the legal effect of the PDR in this proceeding is less than clear and convincing.

92. Petitioner failed to sufficiently evidence the specific standards allegedly enunciated in the PDR. The allegation is that the PDR states that obesity drugs should be discontinued within a "few weeks." Petitioner failed to define a "few weeks" with clear and convincing evidence as any period less than 90 days.

93. The remaining grounds alleged in paragraphs 19 through 21 recite or paraphrase provisions of the PDR. No further findings are made concerning paragraphs 19 through 21.

94. Petitioner proved the allegation in paragraph 22 that Rx dispensed hundreds of medications each day from October 5 through 18, 2001. Petitioner did not prove the remaining grounds alleged in paragraph 22.

95. For reasons stated in paragraphs 9 through 11 of the Findings of Fact, evidence of the allegation in paragraph 22 that prescribing physicians wrote and submitted prescriptions based solely on information received from Internet questionnaires is less than clear and convincing. Information included in the Internet questionnaires is not established by the requisite standard of proof.

96. No finding is made concerning the grounds alleged against Rx in paragraphs 23 through 24 or those alleged against Gordon in paragraphs 23 through 25. Petitioner concedes in its PRO at pages 27 through 28 that Petitioner did not prove grounds supporting the charges that: Respondents failed to report violators to Petitioner; and used USAP to promote or advertise the use or sale of controlled substances.

97. Petitioner proved the grounds alleged against Rx in paragraphs 25 and 26 and those alleged against Gordon in paragraphs 26 and 27. Respondents produced the written record of prescriptions requested by the inspector. Respondents conferred with their attorney before producing the documents.

98. The grounds alleged in paragraphs 27 through 36 against Rx and in paragraphs 28 through 37 against Gordon pertain to an inspection conducted by Petitioner on December 6, 2001. Petitioner proved some of the grounds alleged against Rx in paragraphs 27 and 28 and some of those alleged against Gordon in paragraphs 28 and 29.

99. The evidence shows that Gordon was not present at the pharmacy during the inspection on December 6, 2001. The evidence is less than clear and convincing that Gordon worked at the pharmacy that day. The evidence is insufficient to prove that Gordon committed the acts or omissions alleged in paragraphs 28 through 31 or that the acts or omissions of others were so persistent and practiced during that period that Gordon was vicariously responsible for their acts or omissions.

100. Petitioner proved some of the grounds alleged against Rx in paragraph 27. When the inspector first arrived, two technicians and an administrator were visible to the inspector. Two pharmacists greeted the inspector within 15 minutes of his arrival at Rx. No sign was posted that the pharmacists were out to lunch or on break.

101. The evidence is less than clear and convincing that both pharmacists were out to lunch or on break. One of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

the pharmacists may have been in the bathroom or otherwise available for questions from technicians.

102. Respondents argued during the hearing that legislation identified in the record as the "potty bill" carves out an exception to the requirement to post a sign when a pharmacist goes to the bathroom. Although the argument does not evidence the "potty bill," the argument creates sufficient doubt in the mind of the trier of fact concerning the issue of whether both pharmacists were out to lunch.

103. Evidence of the whereabouts of the second pharmacist is less than clear and convincing. Evidence defining the term "[l]ater" is less than clear and convincing. Petitioner failed to prove the allegations in paragraph 28 that a technician was working "alone" or was "unsupervised."

104. If it were found that Rx committed the charged violation, there would be no potential or actual harm. The requirement for a sign has little meaning for an Internet pharmacy such as Rx. The testimony of several witnesses for Petitioner makes clear that Rx is not open to patients who physically walk into the pharmacy and present written prescriptions. The front door is frequently locked. At least one investigator had to knock on the front door to gain access. Patients who fill their prescriptions at Rx "walk in" electronically and are unable to read any sign posted inside the pharmacy. The only persons who would benefit from such a sign would be those employed at the pharmacy. More likely than not, Rx employees do not need a sign to tell them a pharmacist is not in the same room with them.

105. The evidence is less than clear and convincing that Rx employees failed to properly label drugs on December 6, 2001. The plain terms of paragraph 28 admit that Rx complied with all but one of the labeling requirements in Rule 64F-12.006(1)(a) by ensuring that its employees place pills in vials labeled with all of the requisite information except dosage form. The evidence is less than clear and convincing that the labels did not include dosage form.

106. The evidence is less than clear and convincing that Rx placed the labeled vials with "unsigned prescriptions." Rather, the preponderance of evidence shows that the unsigned documents are the written record of electronic prescriptions and not unsigned written prescriptions.

107. Petitioner proved the allegations against Rx in paragraph 29. The dates alleged in paragraph 29 are included in previous findings that Rx dispenses large numbers of medications ordered by Drs. Rosenkrantz, Rivera, and Thompson. Petitioner did not prove

substantially similar allegations against Gordon in paragraph 30.

108. Petitioner did not prove the allegations in paragraph 30 and 31 that Rx and Gordon knowingly possessed mislabeled drugs. The evidence is less than clear and convincing that Rx employees possessed mislabeled drugs or, if so, that Rx or Gordon are vicariously responsible for that deficiency.

109. The grounds alleged to have occurred on December 6, 2001, are not supported by the quantum or quality of evidence that supports the finding of mislabeled drugs on October 18, 2001. Evidence of grounds arising from the inspection on December 6, 2001, primarily consists of the testimony of one inspector and three exhibits. The photographs in evidence pertain to the inspection conducted on October 18, 2001. Petitioner's experts relied on those photographs, in relevant part, in rendering their opinions concerning allegations that Rx knowingly possessed mislabeled drugs.

110. Expert opinions are unnecessary to assist the trier of fact in determining whether Rx possessed mislabeled drugs on any date. The trier of fact is capable of making that determination based on the standards enunciated in the applicable rules, the testimony of the fact witnesses, and the pictures and documents that support their testimony.

111. Grounds alleged against Rx in paragraphs 31-36, and those alleged against Gordon in paragraphs 32-37, arise from a re-inspection conducted on January 31, 2002. Like the evidence pertaining to the inspection on December 6, 2001, grounds arising from the inspection on January 31, 2002, are not supported by the quantum or quality of evidence that supports the inspection of October 18, 2001.

112. Petitioner must prove the grounds arising from each inspection by clear and convincing evidence. The trier of fact cannot draw an inference from the findings pertaining to October 18, 2001, to bolster the evidence submitted for the other inspections. If it were found that evidence concerning each inspection satisfied the clear and convincing standard of proof, it would be appropriate for the trier of fact to consider all of the inspections in determining whether the alleged deficiencies were so persistent and practiced that they supported an inference of vicarious responsibility.

113. The evidence is less than clear and convincing that the alleged grounds arising from the inspection on January 31, 2002, are true. The preponderance of evidence shows a bin containing unlabeled vials of medication was on top of a counter on one side of a room

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

Page 17

in the pharmacy. On the other side of the room, all of the medication vials and bins were labeled.

114. The medication in the bin by itself was separated from medication in the pharmacy's active stock. Bins of medication containing active stock were labeled. It is unlikely the separated medication would be inadvertently dispensed.

115. Medication in the separated bin was not labeled because it was being returned to the manufacturer. Respondents did not hold medication in the separated bin to be dispensed.

116. The grounds alleged against Rx in paragraphs 37 through 65 and against Gordon in paragraphs 38 through 65 pertain to complaints filed by T.M. and J.W. For convenience, a finding pertaining to the cited paragraphs may contain references to more than one paragraph. References to a lower numbered paragraph, or group of paragraphs, refer to the grounds alleged against Rx. References to a higher numbered paragraph, or group of paragraphs, refer to grounds alleged against Gordon. Petitioner proved the grounds alleged in paragraphs 37 (against Rx) and 38 (against Gordon).

117. Petitioner proved some of the grounds alleged in paragraphs 38 through 48 and 39 through 49 and portions of the grounds alleged against Rx in paragraph 52. On October 21, 2001, T.M. opened an e-mail from USAP and responded with information about her. T.M. purchased 90 tablets of Phentermine and paid $169 to USAP by credit card. T.M. subsequently returned the medication and received a refund.

118. T.M. received the medication by overnight delivery. The vial label indicated Rx dispensed the medication. The label listed Dr. Rivera as the prescribing physician.

119. T.M. never saw Dr. Rivera or heard of Rx or Gordon before receiving the medication. T.M. did not choose Rx as a pharmacy and did not choose Gordon as a pharmacist.

120. T.M. attempted to return the medication for a refund. T.M. spoke by telephone to a representative of USAP. The representative denied T.M.'s request for refund.

121. T.M. telephoned Rx at the number provided on the prescription label. T.M. spoke to a female who identified herself as a pharmacist and answered with a heavy accent. It is not clear that Gordon has a heavy accent.

122. T.M. had no technical questions of the medication

dispensed by Rx. The pharmacist stated that she could not help T.M. with her refund and referred T.M. back to USAP.

123. The remaining testimony of T.M. is less than clear and convincing. On cross examination, T.M. distinctly recalled few, if any, facts. Her testimony was neither precise nor specific. T.M. was confused as to material facts in issue.

124. Petitioner failed to prove the remaining grounds alleged in paragraphs 38 through 48 and 39 through 49. The ALJ ruled that evidence of the statements made in the USAP website is hearsay and that Sections 120.57(1)(c) and (l) prohibit the trier of fact from basing a finding on anything less than competent and substantial evidence. There is less than clear and convincing evidence that the website does not afford patients a choice in pharmacies.

125. If it were found that the USAP website failed to offer a choice of pharmacies, the evidence is less than clear and convincing that Respondents knowingly participated in a system that does not afford a choice in pharmacies. USAP is located in the same building that Rx occupies at 5400 University Drive. Any further findings would require the fact-finder to draw an inference based on insufficient evidence.

126. The evidence is less than clear and convincing that Rx controls the operations of USAP; that Rx and USAP are sibling or related companies, or share common officers, managers, directors, or employees; or that Rx has any legal or actual influence in the management or operation of USAP. The evidence is less than clear and convincing that Respondents had editorial control or input into the content and operation of the website used by USAP in the conduct of USAP's business; or that Respondents knew the content of the website. For similar reasons, evidence of the grounds alleged in paragraphs 53 through 65 concerning the content of the USAP website is less than clear and convincing.

127. Petitioner failed to prove the grounds in paragraphs 43 and 44 alleging that the obesity medication prescription for T.M. was not written within the course of the professional practice of medicine. The prescriptions were not written. Petitioner failed to prove the grounds alleged in paragraphs 49 through 51 and 50 through 52.

128. Operative terms in Section 893.02(20) apply to a pharmacist and not to a pharmacy. A pharmacist and a pharmacy are defined separately in Section 465.03(10) and (11). Section 893.02(20) does not require a pharmacy, including Rx, to make any determination regarding the validity test defined in paragraph 42 of the Findings of Fact.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

Page 18

129. Section 893.02(20) requires Gordon to apply the validity test only if Gordon receives a prescription ordered by a physician licensed in a state other than Florida. While the statute necessarily requires Gordon to determine the state in which the prescribing physician is licensed before Gordon can know whether to apply the validity test, the evidence is less than clear and convincing that Gordon failed to perform her statutory duty. Petitioner did not submit any competent substantial evidence that Drs. Rosenkrantz, Rivera, and Thompson are licensed in a state other than Florida. Sufficient evidence of the statutory prerequisite to the charged violation is missing from the record.

130. The prescriptions evidenced in P92 list a Florida address for Drs. Rosenkrantz and Rivera and a Missouri address for Dr. Thompson. It may be reasonable for the fact-finder to infer that the physicians are licensed in the state where they are located, but such an inference is less than clear and convincing. If Drs. Rosenkrantz and Rivera were licensed in Florida, Section 893.02(20) would impose no statutory duty on Gordon concerning their prescriptions.

131. Dr. Thompson is not licensed in Florida. It is unclear that Dr. Thompson is licensed in a state other than Florida. Sufficient evidence of the statutory prerequisite to the charged violation is missing from the record.

132. If it were found that Drs. Rosenkrantz, Rivera, and Thompson are licensed in a state other than Florida, the evidence is less than clear and convincing that Gordon failed to correctly apply the validity test prescribed in Section 893.02(20). Before employees of the pharmacy managed by Gordon dispensed any medications ordered by these physicians, the employees required each physician to sign a site fill list, or daily log, verifying the validity of the professional relationship, the authenticity of the prescription, and the medical necessity for the drugs.

133. An unwritten agency statement prohibits Gordon from dispensing any controlled substance pursuant to a prescription transmitted by a physician who has not conducted an in-person examination of the patient. The unwritten agency statement requires Gordon to determine whether the physician has conducted an in-person examination regardless of the state in which the physician is licensed.

134. It is clear from the record that Drs. Rosenkrantz, Rivera, and Thompson did not physically examine their patients prior to ordering the prescriptions evidenced in P92. Drs. Rosenkrantz, Rivera, and Thompson transmitted substantially all of the prescriptions evidenced in P92.

The prescriptions list Florida addresses for Drs. Rosenkrantz and Rivera and a Missouri address for Dr. Thompson.

135. The prescriptions are for patients located in more than 36 states and the District of Columbia. By negative proof, three prescribing physicians in Florida and Missouri could not have physically examined all of the patients in a single day. For purposes of continuity, further findings regarding the agency statement are made in the Conclusions of Law.

136. Petitioner failed to prove the allegations in paragraphs 64 and 65 that Respondents engage in a fee splitting, commission, kickback, rebate, or split fee arrangement with USAP. Standards defining the prohibited arrangement are not defined clearly and convincingly. No evidence shows that Gordon receives anything from USAP or pays anything to USAP.

137. Rx and USAP are located in the same building and maintain a business relationship. USAP pays Rx a fee for filling prescriptions plus any costs incurred by Rx.

138. USAP pays Rx the costs of each prescription filled plus a fee of either $5 or $10 for each prescription. From October 19, 2001, through January 18, 2002, Rx filled approximately 66,217 prescriptions and billed USAP approximately $584,460 for fees, exclusive of costs. From January 25 through April 26, 2002, Rx filled approximately 88,556 prescriptions and billed USAP approximately $416,100 for fees, exclusive of costs.

139. The evidence is less than clear and convincing that Rx paid any amount to USAP for referring patients to Rx or otherwise. The evidence is less than clear and convincing that USAP paid Rx for anything other than the costs incurred and services performed in filling prescriptions.

## CONCLUSIONS OF LAW

140. DOAH has jurisdiction over the parties and subject matter. The parties received adequate notice of the administrative hearing. Section 120.57(1).

141. The four administrative complaints provide adequate notice of the charges against Rx and Gordon. The complaints correctly cite the statutes and rules referred to in the charges. Petitioner does not propose in its PRO to find Respondents guilty of violating any statutes or rules that are not referred to in one of the four administrative complaints. Relevant judicial decisions are discussed later in the Recommended Order.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

142. The burden of proof is on Petitioner to prove the facts alleged as grounds for the charged violations. Petitioner must show by clear and convincing evidence that Respondents committed the acts alleged in the four administrative complaints and the reasonableness of any proposed penalty. Section 120.57(1)(j); Department of Banking and Finance Division of Securities and Investor Protection v. Osborne Stern and Company, 670 So. 2d 932, 935 (Fla. 1996). Ferris v. Turlington, 510 So. 2d 292 (Fla. 1987); State ex rel. Vining v. Florida Real Estate Commission, 281 So. 2d at 487 (Fla. 1973);

143. The clear and convincing standard of proof is an intermediate standard that is greater than a preponderance of the evidence but less than a reasonable doubt. Smith v. Department of Health and Rehabilitative Services, 522 So. 2d 956, 958 (Fla. 1st DCA 1988). In order to be clear and convincing, evidence must prove a specific fact with the sufficiency needed to produce in the mind of the fact-finder a firm belief, without hesitance, that the alleged fact is true.

> ... clear and convincing evidence requires that evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.Slomowitz v. Walker, 429 So. 2d 797, 800 (Fla. 4th DCA 1983). See also Acevedo v. State, 787 So. 2d 127, 130 (Fla. 3d DCA 2001)(applying the clear and convincing standard to evidence of collateral acts in a criminal proceeding).

144. In determining whether evidence is clear and convincing, the trier of fact may consider only competent substantial evidence. Section 120.57(1)(c) and (l). In license discipline cases, the meaning of competent substantial evidence:

> ... takes on vigorous implications that are not so clearly present on other occasions for agency action under Chapter 120.Bowling v. Department of Insurance, 394 So. 2d 165, 171 (Fla. 1st DCA 1981).

145. Evidence of the facts alleged as grounds for the charged violations in this case must be "indubitably as 'substantial' as the consequences" to Respondents of the proposed agency action. Bowling, 394 So. 2d at 172. The trier of fact cannot find an alleged fact to be true unless competent substantial evidence of the fact is clear and convincing. Davis v. Department of Professional Regulation, 457 So. 2d 1074, 1076 (Fla. 1st DCA 1984)(no competent substantial evidence to support finding that respondent practiced funeral directing);

Robinson v. Florida Department of Dentistry, 447 So. 2d 930 (Fla. 3d DCA 1984)(testimony of one interested witness is not competent substantial evidence); Bach v. Florida State Board of Dentistry, 378 So. 2d 34 (Fla. 1st DCA 1979)(circumstantial evidence that licensee permitted unlicensed person to administer anesthetic is not competent substantial evidence).

146. A pervasive issue in this case is whether the trier of fact can find a fact to be true if the fact is not alleged in one of the four administrative complaints. Petitioner asserts the trier of fact can make such findings if evidence of the un-alleged fact is clear and convincing. Petitioner views due process as requiring specificity of the charges against Respondents but not specificity of the factual allegations that form the grounds for the charges.

147. If Petitioner's view of due process were accepted, it would arguably negate the need for factual allegations in an administrative complaint. An administrative complaint would satisfy the due process requirements for adequate notice merely by correctly citing the statutes or rules that the agency charges the licensee with violating.

148. Petitioner attempts to temper the nugatory thrust of its argument with an explanation. Due process arguably requires an administrative complaint to plead only those grounds known to the agency at the time the agency files the complaint. At the hearing, due process arguably allows the agency to submit evidence of additional grounds discovered prior to hearing.

149. As a general proposition, the ALJ rejected Petitioner's view of due process during the hearing but frequently admitted evidence into the record over Respondents' objection. The ALJ considers the specificity required for admissibility of evidence to be less stringent in a non-jury proceeding than the specificity required for a finding of fact.

150. The ALJ must now determine whether the trier of fact can consider evidence in the record of facts not alleged as grounds for the charged violations. After reviewing relevant case law, the ALJ concludes that due process and Chapter 120 preclude the trier of fact from considering evidence of facts not alleged in the plain language of the four administrative complaints (the specificity requirement).

151. The specificity requirement is not based on judicial decisions that address the sufficiency of the notice of charges. Judicial decisions holding that an agency cannot find a licensee guilty of violating statutes or rules not referred to in an administrative complaint are inapposite to the specificity requirement in this case. However, those decisions demonstrate that the four

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)                                                                              Page 20
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

administrative complaints provide adequate notice of the charges against Respondents. See e.g., B.D.M. Financial Corporation v. Department of Business and Professional Regulation, 698 So. 2d 1359, 1362 (Fla. 1st DCA 1997) (failure to allege violation of statute in administrative complaint is not harmless error); Willner v. Department of Professional Regulation Board of Medicine, 563 So. 2d 805, 806 (Fla. 1st DCA 1990)(agency cannot find licensee guilty of violating three statutes not referred to in administrative complaint); Celaya v. Department of Professional Regulation, 560 So. 2d 383, 384 (Fla. 3d DCA 1990)(agency cannot find licensee guilty of lack of competence when administrative complaint does not refer to that statute); Kinney v. Department of State Division of Licensing, 501 So. 2d 129, 133 (Fla. 5th DCA 1987)(agency cannot find licensee guilty of violating Section 493.319(1)(c) when administrative complaint does not charge that licensee violated that specific statute); Federgo Discount Center v. Department of Professional Regulation Board of Pharmacy, 452 So. 2d 1063, 1065 (Fla. 3d DCA 1984) (allegation in administrative complaint that licensee violated general provisions of Section 465.023(1)(c) is not sufficient notice that licensee is charged with violating specific provisions in Section 465.018).

152. The specificity requirement is not based on judicial decisions invalidating final orders that attempt to apply statutes retroactively. There is no issue in this case concerning the retroactive application of a statute or rule that has been promulgated pursuant to Section 120.54. See e.g., Childers v. Department of Environmental Protection, 696 So. 2d 962, 964 (Fla. 1st DCA 1997)(version of statute in effect at time grounds for disciplinary arose controls); Willner, 563 So. 2d at 806 (agency cannot find licensee guilty of violating statutes before effective date of statute); Lewis v. Criminal Justice Standards and Training Commission, 462 So. 2d 528, 530 (Fla. 1st DCA 1985)(agency cannot impose penalty prior to effective date of statute authorizing the penalty).

153. The specificity requirement is based solely on judicial decisions holding that an agency cannot find a licensee guilty of a charged violation based on evidence of grounds not alleged in the administrative complaint. A review of relevant case law explicates the basis for the specificity requirement.

154. Judicial decisions entered before the enactment of Chapter 120, and shortly thereafter, support Petitioner's assertion that an administrative complaint need not include specific factual allegations. In 1957, the Florida Supreme Court held that due process requires a procedure for disclosure in license discipline cases or specific accusations, but not both. Hickey v. Wells, 91 So. 2d 206, 209 (Fla. 1957). An appellate court decision in 1975 ruled

on the sufficiency of allegations regarding the acts and omissions of a dentist between September 1, 1971, and September 1, 1974. The court held the failure to allege specific times and occasions of alleged violations did not deprive the licensee of due process. Erwin v. State Department of Professional and Occupational Regulation Division of Professions Florida State Board of Dentistry, 320 So. 2d 2, 4 (Fla. 2d DCA 1975).

155. Early judicial decisions did not distinguish between agency action that proposes to discipline a licensee and other types of agency action. Later decisions, however, have interpreted due process as requiring greater specificity in license discipline proceedings than in other administrative proceedings. Davis v. Department of Professional Regulation, 457 So. 2d 1074, 1078-1079 (Fla. 1st DCA 1984).

156. In Davis, the court required grounds alleged in a license discipline case to satisfy stricter specificity requirements than grounds alleged in other types of administrative actions. The court held that judicial decisions upholding less strict factual allegations in employment dismissal cases were distinguishable from cases involving license discipline. Davis, 457 So. 2d at 1078-1079. Similarly, an action seeking an emergency order to take disciplinary action against a licensee must satisfy stricter requirements for specificity than accusations in other types of agency action. United Insurance Company of America v. State Department of Insurance, 793 So. 2d 1182 (Fla. 1st DCA 2001); Life & Health Insurance Company of America v. Treasurer of the State, 794 So. 2d 709 (Fla. 1st DCA 2001).

157. Agency action that does not seek to discipline a licensee still does not need to conform to the stricter specificity required for factual allegations in license discipline cases. For example, a statement of the grounds for denying a license application is sufficient if it states generally that the applicant lacks good moral character. Cohen v. Department of Business Regulation, 584 So. 2d 1083 (Fla. 1st DCA 1991). Charges in an administrative proceeding seeking dismissal from employment need not conform to the formal exactness required of pleadings in court. Jacker v. School Board of Dade County, 426 So. 2d 1149, 1150 (Fla. 3d DCA 1983). Accusations in an action seeking dismissal from employment need not satisfy requirements for specific accusations as long as there is full disclosure to the employee. Opa-Locka v. Ownens, 382 So. 2d 102, 104-105 (Fla. 3d DCA 1980).

158. An administrative complaint seeking disciplinary action must allege the specific acts or omissions that form the grounds for the violations charged in the administrative complaint. An agency cannot find a licensee guilty of a charged violation based on evidence

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

Page 21

of grounds not specifically alleged in the administrative complaint. Ghani v. Department of Health, 714 So. 2d 1113 (Fla. 1st DCA 1998); Cotrill v. Department of Insurance, 685 So. 2d 1371 (Fla. 1st DCA 1996).

159. In Cotrill, the administrative complaint referred to Sections 627.4085(1) and 627.8405 but did not allege facts that constituted a violation of the statutes. The court reversed a finding that the licensee violated the statutes referred to in the administrative complaint. Judge Benton explained:
> Predicating disciplinary action against a licensee on conduct never alleged in an administrative complaint... violates the Administrative Procedure Act. To countenance such a procedure would render nugatory the right to a formal administrative proceeding to contest the allegations of an administrative complaint. Cotrill, 685 So. 2d at 1372.

160. In Ghani, the administrative complaint charged a physician with violating Section 458.331 by failing to practice medicine with the requisite standard of care. As grounds for the charged violation, the administrative complaint alleged that the licensee attempted to treat the patient's supraventricular tachycardia in the licensee's office before transporting the patient to the hospital. Once the licensee's attempts proved unsuccessful, the complaint alleged the licensee elected to transport the patient to the hospital. The final order found the licensee guilty on the ground that the licensee failed to arrange for ambulance transport to the hospital.

161. The court reversed the finding of guilt based on the ground that the physician in Ghani failed to call for an ambulance. The administrative complaint did not allege that the licensee allowed the patient's wife to transport the patient in her husband's car rather than by ambulance. The court rejected the agency's argument that the private-transport decision could be broadly characterized as one of the substandard decisions alleged in the administrative complaint. The court held that the plain language of the complaint addressed only the licensee's initial decision to care for his patient in the licensee's office. Ghani, 714 So. 2d at 1115.

162. An agency cannot find a licensee guilty of a statutory violation charged in a Notice of Intent when the Notice of Intent fails to make specific factual allegations concerning the charges. Hamilton v. Department of Business and Professional Regulation, 764 So. 2d 778 (Fla. 1st DCA 2000). An agency cannot find a licensee guilty of a charge that he failed to advise the Board of Medicine of his new address on the ground that the licensee failed to notify his patients of his new address. Arpayoglou v. Department of Professional Regulation, 603 So. 2d 8 (Fla. 1st DCA 1992). The Board of Trustees

cannot withdraw a previously issued "consent to use" on grounds not stated in the written notice of withdrawal. Board of Trustees of the Internal Improvement Trust Fund of the State of Florida v. Barnett, 533 So. 2d 1202, 1206(Fla. 3d DCA 1988). Evidence of a criminal matter in another jurisdiction is inadmissible under the judicial notice statute in the absence of adequate notice. Kunen v. Department of Business and Professional Regulation, 642 So. 2d 60 (Fla. 3d DCA 1994). Cf., Maddox v. Department of Professional Regulation, 592 So. 2d 717, 720 (Fla. 1st DCA 1992)(use of generalized terms in a recommended order is sufficiently specific when administrative complaint states specific behavior and criteria).

163. An agency cannot find that a licensee did not practice medicine in accordance with the applicable standard of care by failing to comply with a Professional Recovery Network (PRN) contract when the administrative complaint does not allege the act or omission as a ground for the charged violation. Lusskin v. State of Florida Agency for Health Care Administration Board of Medicine, 731 So. 2d 67, 68 (Fla. 4th DCA 1999). An agency cannot charge that a licensee violated a statute by performing three unnecessary tests and find the licensee guilty of violating the statute by performing a fourth test not alleged in the administrative complaint. Sternberg v. Department of Professional Regulation Board of Medical Examiners, 465 So. 2d 1324, 1325 (Fla. 1st DCA 1985).

164. An agency cannot charge a licensee with violating a statute on the ground that the licensee abandoned one construction project and find the licensee guilty of violating the statute on the ground that the licensee abandoned a second project not alleged in the administrative complaint. Hunter v. Department of Professional Regulation, 458 So. 2d 842, 844 (Fla. 2d DCA 1984). An agency cannot charge a licensee with professional misconduct on the alleged ground that the licensee prescribed excessive and improper medications and find the licensee guilty of misconduct on the un-alleged ground that the licensee failed to refer a patient. Wray v. Department of Professional Regulation Board of Medical Examiners, 435 So. 2d 312, 315 (Fla. 1st DCA 1983).

165. In Department of Children and Families v. Morman, 715 So. 2d 1076, 1077 (Fla. 1st DCA 1998), the court reversed an ALJ's sua sponte dismissal of a charge in the administrative complaint. The court found the complaint alleged the nature and dates of violations with sufficient specificity and that the licensee failed to object to the lack of specificity. Unlike the licensee in Morman, Respondents have not failed to object to the lack of specificity in the factual allegations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

166. In Werner v. State Department of Insurance and Treasurer, 689 So. 2d 1211, 1213 (Fla. 1st DCA 1997), the court ruled that an administrative complaint alleging the factual chronology of a transaction in detail was sufficiently specific even though the complaint did not allege that a misrepresentation was "willful." The court observed that the licensee did not object to the absence of an allegation of willfulness until the appeal. Unlike the facts in Werner, Respondents made their objections during the hearing.

167. During the hearing, Petitioner argued that the appropriate procedures for curing imprecision or uncertainty in the factual allegations require Respondents to file pre-hearing motions such as a motion to dismiss the complaints; a motion for more definite statement; or a motion in limine to exclude evidence of grounds not alleged. By failing to avail themselves of an appropriate remedy, Petitioner argues that Respondents effectively waived their right to object to evidence at the hearing based on deficiencies in the allegations. Petitioner cited no legal authority to support its "waiver" argument in a license discipline proceeding.

168. In a disciplinary proceeding, the agency bears the onus imposed by due process to allege facts that are sufficient to support the charged violations. If the Petitioner's "waiver" argument were accepted, it would effectively place the onus on a licensee to ensure that the administrative complaint is sufficiently specific; or suffer the sanction of losing the licensee's right to object to evidence based insufficient factual allegations. The ALJ is not willing to impose that sanction without specific legal authority to do so.

169. Other cases further explicate the basis of the specificity requirement in this case. Proposed penalties need not be alleged as specifically as the grounds for the proposed penalties. An allegation that a licensee fraudulently obtained two of five licenses is sufficient notice that the proposed penalty is revocation of all five licenses. Libby Investigations v. Department of State Division of Licensing, 685 So. 2d 69, 71 (Fla. 1st DCA 1996). However, an agency may not consider grounds not alleged in the administrative complaint during the penalty phase of an administrative complaint. Chrysler v. Department of Professional Regulation, 627 So. 2d 31, 34 (Fla. 1st DCA 1993); Klein v. Department of Business and Professional Regulation, 625 So. 2d 1237, 1239 (Fla. 2d DCA 1993); Gifford v. Department of Professional Regulation, 622 So. 2d 636 (Fla. 1st DCA 1993); Decola v. Castor, 519 So. 2d 709 (Fla. 2d DCA 1988). See also Boulton v. Morgan, 643 So. 2d 1103 (Fla. 4th DCA 1994)(agency action to dismiss a teacher from her employment). But see Stueber v. Gallagher, 812 So. 2d

454 (Fla. 5th DCA 2002) and Autoworld of America Corp. v. Department of Highway Safety, 754 So. 2d 76 (Fla. 3d DCA 2000) (failure to request a formal hearing during informal hearing waives right to challenge factual basis of administrative complaint).

170. Apart from principles of due process, jurisdictional principles unique to Chapter 120 support the specificity requirement. In Cotrill, the court based its decision on Chapter 120 rather than due process. Judge Benton explained:

> While we base our decision on the Administrative Procedure Act, we are not unaware that both state and federal constitutions require adequate notice before a citizen's livelihood can be taken away. (citations omitted)Cotrill, 685 So. 2d at 1372.

171. Differences in the jurisdictional prerequisites for informal and formal proceedings are illustrative. Courts generally hold that an agency cannot consider, in informal proceedings after settlement, evidence of facts not alleged in the administrative complaints. To do so, deprives the licensee of her or his right to dispute those facts. Chrysler, 627 So. 2d at 34; Klein, 625 So. 2d at 1239; Gifford, 622 So. 2d 636; Decola v. Castor, 519 So. 2d 709. See also Boulton v. Morgan, 643 So. 2d 1103.

172. Disputed issues of fact provide the exclusive basis for jurisdiction in formal proceedings such as this one. Sections 120.569(1). By analogy to decisions involving informal proceedings, neither the ALJ nor the referring agency has jurisdiction over facts not alleged in the administrative complaint because un-alleged facts are not disputed facts within the meaning of Section 120.569(1). A licensee never has a timely opportunity to dispute un-alleged facts.

173. The specificity requirement in this case is based on principles of due process and jurisdiction. The trier of fact cannot find that Respondents committed acts or omissions not alleged in the administrative complaints. To do otherwise would violate due process requirements for adequate notice and would exceed the jurisdiction authorized in Section 120.569(1).

174. For reasons stated in the Findings of Fact, Petitioner failed to prove that Respondents are guilty of the charges in the Amended Complaints. Petitioner failed to prove the grounds alleged in the Amended Complaints.

175. Count One in the Administrative Complaints charges that Rx violated Section 465.023(1)(c) and that Gordon violated Section 465.016(1)(e). The two provisions are general statutes that do not prescribe specific standards by which Respondents' conduct may be judged. See e.g., McDonald v. Department of Professional

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

Page 23

Regulation Board of Pilot Commissioner, 582 So. 2d 660, 670 (Fla. 1st DCA 1991)(dissenting opinion of Judge Zehmer). In relevant part, the two statutes authorize Petitioner to discipline Respondents if Petitioner proves that Respondents failed to comply with the provisions of Chapter 893.

176. Count One states, in relevant part:
Based on the foregoing [factual allegations in 65 paragraphs], Respondent's license... is subject to discipline... for violating chapter 893, to wit:
a. Section 893.04(1)... for dispensing controlled substances outside the course of the professional practice of pharmacy as specified in Section 893.02(20)... which requires that the pharmacist shall first determine in the exercise of his or her professional judgment that the order was issued pursuant to a valid patient/physician relationship that is authentic and that the drugs... so ordered are considered necessary for the continuation of treatment of a chronic or recurrent illness. (emphasis not supplied)
b. Section 893.04(1)(b)... for dispensing controlled substances for prescriptions which are not signed by the prescribing physician.

177. Petitioner did not prove that Respondents violated Section 893.04(1)(b). Section 893.04(1)(b) applies only to written prescriptions. Respondents do not fill written prescriptions or dispense medications pursuant to written prescriptions.

178. Respondents fill Internet prescriptions that are transmitted by "other means of communication" within the meaning of Section 893.02(20). Section 893.04(1)(b) does not apply to the prescriptions that Respondents fill.

179. Count One does not charge that Respondents violated Section 893.04(1)(a). Section 893.04(1)(a) authorizes Respondents to dispense controlled substances upon an oral prescription. Respondents dispense controlled substances upon Internet prescriptions.

180. Internet prescriptions are not oral prescriptions because the prescribing physician does not transmit the prescription by word of mouth or by telephone (voice) within the meaning of Section 893.02(20). As Respondents' expert explained during the hearing:
Q. I use the term "electronic," but I guess... a physician could [prescribe] over the telephone[?].

* * *

A. Oral, that would be nonelectronic.

Transcript, Volume VI, page 936, Line 14-15.

181. A prescription transmitted by means other than voice is not an oral prescription. A prescription transmitted by telegram or facsimile may be a written prescription but may not bear an original signature of the prescribing physician.

182. Section 893.04(1) expressly authorizes licensees to dispense controlled substances based on oral or written prescriptions. Section 893.04(1) does not expressly authorize licensees to dispense controlled substances pursuant to any prescription other than an oral or written prescription.

183. Internet prescriptions are neither oral nor written prescriptions. They are electronic prescriptions transmitted by "other means of communication."

184. No conclusion or finding is made that Respondents violated Section 893.04(1) by dispensing controlled substances pursuant to prescriptions other than written or oral prescriptions. Count One does not charge Respondents with violating Section 893.04(1) on those grounds, and none of the administrative complaints allege those specific acts or omissions as a ground for the charged violation.

185. Count One charges Respondents with violating Section 893.04(1) based on two grounds. First, Respondents allegedly failed to determine that the patient-physician relationship was valid; and that the medication was necessary. Second, Respondents allegedly dispensed controlled substances based on unsigned written prescriptions.

186. A charge that Respondents violated Section 893.04(1) for the reasons alleged in Count One is not adequate notice that the agency intends to find Respondents guilty of violating Section 893.04(1) for the un-alleged grounds that Respondents dispensed controlled substances pursuant to prescriptions that are neither oral nor written prescriptions. The un-alleged grounds cannot be broadly characterized as one of the facts alleged in the four administrative complaints that shows Internet prescriptions are invalid. The plain language of the complaints addresses only those charges and grounds expressly stated. Ghani, 714 So. 2d at 1115; Cottrill, 685 So. 2d at 1372. Neither the ALJ nor the referring agency has jurisdiction under Chapter 120 to consider evidence of facts not alleged in the four administrative complaints because un-alleged facts are not disputed facts within the meaning of Section 120.569(1). Chrysler, 627 So. 2d at 34; Klein, 625 So. 2d at 1239; Gifford, 622 So. 2d 636; Decola v. Castor, 519 So. 2d 709. See also Boulton v. Morgan, 643 So. 2d 1103.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

187. Petitioner did not prove that Respondents violated Section 893.04(1) by failing to determine the validity of the patient-physician relationship, the authenticity of the prescription, or the necessity of the medication. The relevant portion of Section 893.02(20) cited in Count One applies only to a pharmacist. By its terms, the statute does not apply to a pharmacy, including Rx. The terms "pharmacist" and "pharmacy" are defined separately in Sections 465.03(10) and (11).

188. In relevant part, Section 893.02(20) requires Gordon to apply the validity test only if the prescribing physician is licensed in a state other than Florida. The evidence is less than clear and convincing that Drs. Rosenkrantz, Rivera, and Thompson are licensed in a state other than Florida. There is no evidentiary basis for applying the provision of Section 893.02(20) referred to in Count One.

189. Petitioner relies on Sections 893.04(1)(b) and 893.02(20) as a basis for proposing disciplinary action against Respondents' licenses. The terms of such statutes must be construed strictly in favor of the licensee and against the imposition of discipline. State ex rel. Jordan v. Pattishall, 99 Fla. 296, 126 So. 147 (Fla. 1930); Ocampo v. Department of Health, 806 So. 2d 633 (1st DCA Fla. 2002); Equity Corp. Holdings Inc. v. Department of Banking and Finance Division of Finance, 772 So. 2d 588 (Fla. 1st DCA 2000); Jonas v. Florida Department of Business and Professional Regulation, 746 So. 2d 1261 (Fla. 3d DCA 2000); Loeffler v. Florida Department of Business and Professional Regulation, 739 So. 2d 150 (Fla. 1st DCA 1999); Elmariah v. Department of Professional Regulation Board of Medicine, 574 So. 2d 164 (Fla. 1st DCA 1990); Rush v. Department of Professional Regulation, 448 So. 2d 26 (Fla. 1st DCA 1984); Federgo Discount Center v. Department of Professional Regulation, 452 So. 2d 1063 (Fla. 3d DCA 1984); Bowling v. Department of Insurance, 394 So. 2d 165 (Fla. 1st DCA 1981); Lester v. Department of Professional and Occupational Regulations, 348 So. 2d 923 (Fla. 1st DCA 1977).

190. The determinations required in Section 893.02(20) are subject to different interpretations. The statute could be construed to require Respondents to ensure that the physician ordered the medication, considered the relationship valid, and determined the drugs necessary. Alternatively, the statute could be construed to require a pharmacist to make determinations independently of the determinations made by the physician. Neither party cited any legal authority to the ALJ that resolves that ambiguity. Any ambiguity in the statute must be construed in favor of the Respondents and against the imposition of discipline. Ocampo, 806 So. 2d 633; Jonas,

746 So. 2d 1261; Loeffler, 739 So. 2d 150; Elmariah, 574 So. 2d 164; Rush, 448 So. 2d 26; Ferdego, 452 So. 2d 1063; Bowling, 394 So. 2d 165; Lester, 348 So. 2d 923.

191. A construction of Section 893.02(20) that would require Gordon to substitute her professional judgment for that of the prescribing physician arguably may have the effect, in particular cases, of requiring Gordon to practice medicine within the meaning of Section 458.305(3). In relevant part, Section 458.305(3) defines the practice of medicine to include:

> ... the diagnosis... or prescription for any human disease, pain, injury, deformity, or other physical or mental condition. Section 458.327(1)(a) makes it a felony to practice medicine in Florida without being licensed to do so. The criminal exposure to a licensee would be greater if the licensee were required to make an independent determination of the medical necessity of the medication to treat an illness or other condition.

192. The requirement for Gordon to independently determine the validity of the patient-physician relationship is also problematic. Judicial decisions cited by Respondents differ from state to state in the standards used to determine the validity of a patient-physician relationship. If Section 893.02(20) were construed to require Gordon to exercise her own judgment on this issue, it is unclear whether Gordon would apply Florida law to determine the validity of the professional relationship of a physician licensed outside of Florida or would apply the law of the state where the physician is licensed.

193. Petitioner cites no statute or promulgated rule applicable to pharmacists or pharmacies that defines a valid physician-patient relationship, other than the statutory duty discussed in paragraph 131 of the Findings of Fact that requires a pharmacist to determine the state in which the prescribing physician in licensed. Rather, Petitioner relies on an unwritten agency statement that requires an in-person examination by the physician for the patient-physician relationship to be valid.

194. Respondents argue in their PRO that the agency statement relied on by Petitioner is "nonrule" policy. Before addressing the substance of Respondents' argument, the form of the argument must be corrected.

195. Respondents use the term "nonrule" policy incorrectly to refer to an agency statement that, according to Respondents, satisfies the definition of a rule in Section 120.52(15); but has not been promulgated as a rule pursuant to the rulemaking requirements in Section 120.54. The term "nonrule" policy does not have that meaning.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)                                                                    Page 25
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

196. A "nonrule" agency statement is an agency statement that does not satisfy the definition of a rule in Section 120.52(15), i.e., a "nonrule." An agency statement is not a "nonrule" statement merely because the statement has not been promulgated pursuant to Section 120.54. Section 120.54 does not define a rule and does not require "nonrule" agency statements to be promulgated.

197. Section 120.52(15) determines whether an agency statement is a rule or is a "nonrule" statement. If Section 120.54 were used to determine whether an agency statement is a "nonrule" statement, based on whether it is promulgated as a rule, any agency statement not promulgated as a rule would be a "nonrule" statement that the agency could explicate and "prove-up" during an administrative hearing. The exception to the requirement for rulemaking could very easily swallow the rule. Dore, P., Florida Limits Policy Development Through Adjudication and Requires Indexing and Availability of Agency Orders, 19 FLA. ST. U. L. REV. 437 (1991) ("[b]efore long... the limited McDonald exception swallowed the rule").

198. That which defines a rule necessarily defines what is "nonrule." Section 120.52(15) determines whether an agency statement is a rule or a nonrule statement. Section 120.54 does not define a rule and requires only those agency statements defined as rule in Section 120.52(15) to be promulgated pursuant to the rulemaking requirements in Section 120.54. "The Scarecrow in McDonald's Farm: A Fairy Tale About Administrative Law," Fla. B.J. 60 (March 1999).

199. An agency statement that satisfies the definition of a rule in Section 120.52(15) and is promulgated pursuant to Section 120.54 is a promulgated rule. An agency statement that satisfies the statutory definition of a rule but is not promulgated pursuant to Section 120.54 is an "unpromulgated rule." See also St.Johns River Water Management District v. Modern Inc., 784 So. 2d 464 (Fla. 1st DCA 2001)(affirming the ALJ's determination that an agency statement in the form of a memorandum is an unpromulgated rule). An unpromulgated rule is referred to in Section 120.57(1)(e) as an "unadopted" rule.

200. Respondents argue, in substance, that Petitioner relies on an unpromulgated rule as a basis for the disciplinary action proposed in this case. The first inquiry that must be made to resolve the issue is to ascertain the terms of the agency statement. Aloha Utilities Inc. v. Public Service Commission, 723 So. 2d 919, 921 (Fla. 1st DCA 1999).

201. The terms of the agency statement are sufficiently

described in testimony from the Executive Director of the Board of Pharmacy at the hearing. Sometime in February or April of 2000, the Board of Medicine conducted one of its regular meetings. During the meeting, the Board of Medicine delineated a number of things that needed to occur before a physician could write a prescription. In relevant part, the Board of Medicine determined that a physician must physically examine a patient before writing a prescription. The Board of Medicine determined that a prescription written without a physical examination is an invalid prescription. Shortly after April 2000, the Board of Pharmacy applied to pharmacists an unwritten agency statement substantially equivalent to the agency statement enunciated by the Board of Medicine.

202. By its terms, the agency statement of the Board of Pharmacy is limited to pharmacists. However, Petitioner seeks to enforce the statement through disciplinary action against a pharmacy, namely Rx.

203. An unpromulgated rule can be expressed through agency action taken to enforce the rule. Action taken to enforce clinical privileges in hospital by-laws is an invalid rule. Reiff v. Northeast Florida State Hospital, 710 So. 2d 1030, 1032 (Fla. 1st DCA 1998). Enforcement of a tax assessment procedure in a training manual is an invalid rule. Department of Revenue of State of Florida v. Vanjaria Enterprises Inc., 675 So. 2d 252 (Fla. 5th DCA 1996). An administrative order is an invalid rule. Florida Public Service Commission v. Central Corporation, 551 So. 2d 568, 570 (Fla. 1st DCA 1989). Administrative orders may not be used to prescribe substantive standards. Albrecht v. Department of Environmental Regulation, 353 So. 2d 883, 887 (Fla. 1st DCA 1977). See also Christo v. Florida Department of Banking and Finance, 649 So. 2d 318, 319-320 (Fla. 1st DCA 1995)(enforcement of "CAMEL" ratings as a means to recover costs of examination and supervision of an institution is an invalid rule under former Section 120.535). Department of Administration Division of Personnel v. Harvey, 356 So. 2d 323, 324-325 (Fla. 1st DCA 1977)(statement denying application is an invalid rule).

204. The unwritten form of an agency statement does not prevent the statement from satisfying the statutory definition of a rule in Section 120.52(15). Department of Highway Safety and Motor Vehicles v. Schluter, 705 So. 2d 81, 84 (Fla. 1st DCA 1997). One of the principal goals of Chapter 120 is:

> ... the abolition of "unwritten rules" by which agency employees can act with unrestrained discretion to adopt, change and enforce governmental policy....Straughn v. O'Riordan, 338 So. 2d 832, 834 n. 3 (Fla. 1976); Schluter, 705 So. 2d at 84.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

205. A determination of whether an agency statement is incipient nonrule policy or has emerged into general applicability, within the meaning of Section 120.52(15), is determined by the effect of the statement rather than the label ascribed to it by the agency that utters the statement. Department of Revenue of State of Florida v. Vanjaria Enterprises Inc., 675 So. 2d 252, 255 (Fla. 5th DCA 1996); Balsam v. Department of Health and Rehabilitative Services, 452 So. 2d 976, 977 (Fla. 1st DCA 1984); Amos v. Department of Health and Rehabilitative Services District IV, 444 So. 2d 43, 456-47 (Fla. 1st DCA 1983); State Department of Administration Division of Personnel v. Harvey, 356 So. 2d 323, 325 (Fla. 1st DCA 1977). Agency statements satisfy the test of general applicability if they:

> ... are intended by their own effect to create rights, or to require compliance, or otherwise to have the direct and consistent effect of law. McDonald v. Department of Banking and Finance, 346 So. 2d 569, 581 (Fla. 1st DCA 1977).

206. The agency statement by the Board of Pharmacy satisfies the statutory definition of a rule in Section 120.52(15). The statement is applied by the Board of Pharmacy with general applicability and prescribes law or policy or describes the procedure or practice requirements that the Board of Pharmacy imposes on pharmacists and pharmacies through enforcement action proposed by Petitioner. The agency statement of the Board of Pharmacy does not fit within any of the exceptions in Section 120.52(15).

207. Rulemaking is a quasi-legislative function. Booker Creek Preservation Inc. v. Department of Transportation, 534 So. 2d 419, 422 (Fla. 5th DCA 1988). Agency rules have the force and effect of law. State v. Jenkins, 469 So. 2d 733, 734 (Fla. 1985).

208. A legislative enactment that is not promulgated is unenforceable irrespective of the wisdom of the law. Similarly, the wisdom of an agency statement does not exempt it from the rulemaking procedures required in Section 120.54.

209. The requirement to promulgate rules is not a matter of agency discretion. In relevant part, Section 120.549(1)(a) provides:

> Each agency statement defined as a rule by s. 120.52 shall be adopted by the rulemaking procedure provided by this section as soon as feasible and practicable.

210. The purpose for invalidating unpromulgated rules is to enforce fundamental principles of due process in administrative actions by requiring an agency to provide those persons that the agency regulates with adequate

notice of agency statements of general applicability defined as a rule in Section 120.52(15). The requirement to invalidate an unpromulgated rule is intended to:

> ... close the gap between what the agency and its staff know about the agency's law and policy and what an outsider can know. (citations omitted) McDonald, 346 So. 2d at 580.

211. Notwithstanding the notice requirements imposed by due process and the principal goals of Chapter 120, Section 120.57(1)(e), in relevant part, provides:

> Any agency action... based on an unadopted rule is subject to de novo review by an administrative law judge....In the de novo review, the "agency must demonstrate" that the unpromulgated rule satisfies the requirements of Sections 120.57(1)(e)2a-g.

212. Petitioner did not satisfy its burden of proof. The evidence is less than clear and convincing that the agency statement enunciated by the Board of Pharmacy satisfies essential requirements of Section 120.57(1)(e).

213. Petitioner failed to show, even by a preponderance of the evidence, that the unpromulgated rule does not enlarge, modify, or contravene the specific provisions of Section 893.02(20). Section 120.57(1)(e)b. The agency statement enlarges Section 893.02(20) so that it applies to pharmacies and so that it requires licensees to make the determinations enumerated in the statute for prescriptions written by physicians licensed in Florida.

214. Prior to the unpromulgated rule, Petitioner did not interpret Section 893.02(20) to require a pharmacist to determine if a physician had conducted an in-person examination of the patient. After the Board of Pharmacy uttered the unpromulgated rule, Petitioner changed its interpretation of Section 893.02(20) to require pharmacists to ensure the prescribing physician had personally examined the patient. Petitioner cannot discipline Respondents based on a change in an agency's interpretation of a statute where the licensee was in compliance with the earlier agency interpretation and the terms of the statute did not change. Food 'N Fun Inc. v. Department of Transportation, 493 So. 2d 23, 24-25 (Fla. 1st DCA 1986); Wainwright v. State Department of Transportation, 488 So. 2d 563, 565 (Fla. 1st DCA 1986).

215. Petitioner failed to show, even by a preponderance of the evidence, that the unpromulgated rule establishes adequate standards for agency decisions within the meaning of Section 120.57(1)(e)c. Without specific standards against which the licensee's conduct can be judged, a determination of licensee responsibility becomes a matter of personal opinion and after-the-fact determinations. The evidence is less than clear and convincing that the unpromulgated rule is arbitrary and

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

capricious within the meaning of Section 120.57(1)(e)d.

216. Petitioner failed to show, even by a preponderance of the evidence, that Petitioner is not applying the unpromulgated rule to Respondents without due notice within the meaning of Section 120.57(1)(e)d. Notice to Respondents of the change in agency policy comes from either the unwritten agency statement uttered shortly after April 2000, or the proposed rule published on July 5, 2002. In order for the proposed rule to provide adequate notice to Respondents, it would need to be applied retroactively to grounds alleged to have occurred from April 6, 2001, through June 17, 2002.

217. The general rule of law is that statutes cannot be applied retroactively, and rules cannot exceed the specific authority delegated by the statutes that the rules implement. Petitioner is not empowered to discipline a licensee for any cause that is not clearly within the ambit of Petitioner's statutory authority. Food 'N Fun, 493 So. 2d at 24; Wainwright v. State Department of Transportation, 488 So.2d 563, 565 (Fla. 1st DCA 1986).

218. The retroactive application of a statute and the rule that implements the statute takes on particular significance in a license discipline proceeding such as this case. Childers, 696 So.2d at 964; Willner, 563 So.2d at 806; Lewis, 462 So. 2d at 530. Petitioner did not cite any legal authority authorizing the application of the unpromulgated rule retroactively.

219. Any doubt concerning the adequacy of notice of an agency statement or proposed rule used to discipline a licensee must be resolved in favor of the licensee. Ocampo, 806 So.2d 633; Equity Corp., 772 So. 2d at 590; Jonas, 746 So. 2d 1261; Loeffler, 739 So. 2d 150; Elmariah, 574 So.2d 164; Rush, 448 So. 2d 26 ; Ferdego, 452 So.2d 1063. The agency statement and proposed rule do not provide due notice. Section 120.57(1)(e)d.

220. Section 893.02(20) does not require Gordon to substitute her professional judgment for that of Drs. Rosenkrantz, Rivera, and Thompson. Rather, the statute requires Gordon to make a reasonable effort to ensure that the physician has made the determinations required by statute.

221. It is not clear that Gordon failed to satisfy her statutory duty. Assuming arguendo that Gordon was present at Rx on more days than October 18, 2001, and January 31, 2002, and personally dispensed medication, Gordon satisfied her statutory duty by requiring physicians to sign daily logs before Gordon dispensed medications.

222. This case is another in a long line of cases involving the "tension" between the strict construction required in a license discipline proceeding and the deference accorded administrative agencies charged with the responsibility of enforcing statutes involving an agency's substantive jurisdiction. Davis, 457 So. 2d at 1076. Issues concerning due process, jurisdiction, evidence, and pleadings are not infused with agency expertise. Gross v. Department of Health, 819 So.2d 997, 1003-1004 (Fla. 5th DCA 2002).

223. Petitioner did not prove the remaining charges against Gordon by clear and convincing evidence. It is not clear that Gordon was present on any day other than October 18, 2001, and January 31, 2002. Evidence of Gordon's personal conduct was insufficient. Some Rx employees dispensed excessive quantities of obesity drugs in a persistent and practiced manner. However, evidence of Gordon's specific management responsibility and control was insufficient to find Gordon vicariously responsible for the acts or omissions of others. Pic N' Save, 601 So.2d 245, 250 and 256 (Fla. 1st DCA 1992).

224. Petitioner proved only one of the charges against Rx. Petitioner proved that Rx dispensed excessive quantities of controlled substances in violation of Section 465.016(1)(i).

225. Section 465.016(1), in relevant part, provides that the following acts constitute grounds for disciplinary action:
    (i)... dispensing... a... controlled substance, other than in the course of the professional practice of pharmacy. For purposes of this paragraph, it shall be legally presumed that the... dispensing... of... drugs in excessive... quantities is not... in the course of the professional practice of pharmacy.

226. The 24 instances of dispensing excessive quantities of controlled substances were persistent and practiced over a period of 26 days. The violation was negligent rather than intentional or willful. Rx relied in good faith on the QS1 computer system but failed to maintain a system of manual review, or other system, adequate to prevent Rx employees from dispensing excessive quantities of medication in a persistent and practiced manner. Pic N' Save, 601 So.2d at 250 and 256.

227. Rule 64B16-30.001(2)(g) authorizes a minimum penalty of $1,000 for each offense and probation of one year. The maximum authorized penalty is revocation of Rx's license.

228. Rule 64B16-30.001(3) authorizes the ALJ to consider certain aggravating and mitigating factors in determining the penalty that is appropriate in this case. There is no evidence of prior discipline because the four

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
(Cite as: 2003 WL 124675 (Fla.Div.Admin.Hrgs.))

administrative complaints do not allege any prior discipline. Although the potential for harm is great, there is no evidence of actual harm to a patient. Rx undertook reasonable steps to prevent its employees from dispensing excessive quantities of medication. Those steps included the QS1 computer system and the requirement for signed site fill lists from prescribing physicians.

229. The failure to require Rx employees to review patient profiles is not an aggravating factor. Evidence of patient profiles is inconsistent. The nugatory effect of the such evidence is illustrated by analogy in Lortz v. Department of Health, 700 So. 2d 383 (Fla. 1st DCA 1997). In Lortz, the court held a finding of impaired ability to practice medicine to negate an allegation of inability to practice medicine. Id.

### RECOMMENDATION

Based upon the foregoing Findings of Fact and Conclusions of Law, it is

RECOMMENDED that Petitioner enter a Final Order finding Gordon not guilty of the allegations in the two administrative complaints against her; Rx guilty of violating Section 465.016(1)(i); imposing an administrative fine of $24,000 for the 24 instances of dispensing excessive quantities of controlled substances; placing Rx on probation for one year, subject to the condition that Rx utilize personal review or some other system adequate to prevent its employees from dispensing excessive quantities of controlled substances; and requiring Rx to pay the costs directly related to that part of the investigation and prosecution required to prove that Rx dispensed excessive quantities of controlled substances.

DONE AND ENTERED this _____ day of January, 2003, in Tallahassee, Leon County, Florida.

DANIEL MANRY
Administrative Law Judge
Division of Administrative Hearings
The DeSoto Building
1230 Apalachee Parkway
Tallahassee, Florida 32399-3060

Filed with the Clerk of the Division of Administrative Hearings this _____ day of January, 2003.

### NOTICE OF RIGHT TO SUBMIT EXCEPTIONS

All parties have the right to submit written exceptions

within 15 days from the date of this Recommended Order. Any exceptions to this Recommended Order should be filed with the agency that will issue the Final Order in this case.

2003 WL 124675 (Fla.Div.Admin.Hrgs.)
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.