1  **JEFFREY J.A. HINRICHSEN, SBN 204269**
   **THARPE & HOWELL**
2  **2555 3rd Street, Suite 110**
   **Sacramento, California  95818**
3  **Telephone: (916) 475-1600**
   **Facsimile: (916) 475-1606**
4
   Attorneys for Third Party Defendant
5  **CENTURY BANK, FSB**

6

7                  UNITED STATES DISTRICT COURT

8                 NORTHERN DISTRICT OF CALIFORNIA

9                      SAN JOSE DIVISION

10

11 UNITED STATES OF AMERICA,              )   Case No. C-07-03874 RMW
                                          )   *Complaint Filed: July 27, 2007*
12              Plaintiff,                 )   *Assigned to: Ronald M. Whyte*
                                          )
13 v.                                      )   **CENTURY BANK, FSB'S MOTION FOR**
                                          )   **DECLARATORY JUDGMENT;**
14 REAL PROPERTY AND                       )   **MEMORANDUM OF POINTS AND**
   IMPROVEMENTS LOCATED AT 205 SE          )   **AUTHORITIES**
15 SPANISH TRAIL, BOCA RATON,              )
   FLORIDA,                                )   [File concurrently with Declaration of J.A.
16              Defendants.                )   Hinrichsen; Declaration of John O'Neill;
                                          )   [Proposed] Order]
17 ─────────────────────────────          )

18                                            DATE:      April 18, 2008
                                              TIME:      9:00 a.m.
19                                            DEPT:      6

20

21        TO THE COURT, TO ALL PARTIES HEREIN AND THEIR RESPECTIVE

22 ATTORNEYS OF RECORD:

23        PLEASE TAKE NOTICE that on **April 18, 2008**, at the hour of **9:00 a.m.**, or as soon

24 thereafter as the matter may be heard in Department **6** of the captioned Court, located at **280**

25 **South First Street, 4th Floor, San Jose, California**, Third Party Defendant, CENTURY BANK,

26 FSB, ( "Century Bank") will move the Court for an order granting declaratory judgment in its

27 favor, and against UNITED STATES OF AMERICA ("the Government").

28 ///

─────────────────────────────
                          - 1 -
**CENTURY BANK'S MOTION FOR DECLARATORY JUDGMENT**

1    This motion is made on the grounds that a declaratory judgment is needed to clarify the

2    legal relations at issue, specifically, that Century Bank is an "innocent owner" and holder of a

3    valid purchase money mortgage of the property located at 205 SE Spanish Trial, Boca Raton,

4    Florida (the Property), and that Century Bank's security interest in the Property is not subject to

5    forfeiture and Century Bank has priority over the Government's claimed right to civil forfeiture

6    of the Property.

7    This motion will be based upon this Notice, the Memorandum of Points and Authorities

8    in support thereof, the Declaration of Jeffrey J.A.Hinrichsen, Esq., in support of this motion, the

9    pleadings, records and files in this action; and on such further oral and documentary evidence as

10    may be presented at the hearing of this motion.

12    Dated: March ⎰2, 2008                     THARPE & HOWELL

                                              By:

                                              JEFFREY J.A. HINRICHSEN
                                              Attorneys for Third Party Defendant
                                              CENTURY BANK, FSB

THARPE & HOWELL
2555 3rd Street, Suite 110
Sacramento, California 95818

**CENTURY BANK'S MOTION FOR DECLARATORY JUDGMENT**

THARPE & HOWELL
2555 3rd Street, Suite 110
Sacramento, California 95818

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Moving party, Century Bank, FSB ("Century Bank") is a federally chartered savings bank, and holds the first mortgage on property located at 205 SE Spanish Trail, Boca Raton, Florida ("the Property"), in the amount of $5,370,000.00 ("the Note" a copy of which attached hereto as Exhibit A). Century Bank recorded its mortgage on December 21, 2006 (See Palm Beach County Records document which is the cover page of Exhibit A).

On July 27, 2007, the Government filed a Complaint for Forfeiture of the Property based on the allegation that Michael James Arnold participated in a conspiracy to distribute Schedule III and IV controlled substances to residents throughout the United States including consumers residing within the venue of the United States District Court for the Northern District of California and that he laundered the proceeds from his drug trafficking activities through the use and acquisition of the Property. On August 10, 2007, the Government filed a lis pendens to secure judicial forfeiture of the Property.

On August 29, 2007, Century Bank filed an Answer to the Government's Complaint for Forfeiture and Statement of Claim as a Third Party Defendant. Century Bank is not a named party yet filed this answer to assert the following: (1) Century Bank is an "innocent owner" and holder of a valid purchase money mortgage of the Property; (2) Century Bank's security interest in the Property is not subject to forfeiture; and (3) Century Bank has priority over the Government's claimed right to civil forfeiture of the Property.

Prior to filing the within motion, Century Bank attempted to resolve its issues with the Government informally. Century Bank insists that its right to foreclose on the Property must not be restricted should Mr. Arnold default on his obligation to pay the Note. Attached as Exhibit B are letters between counsel for Century Bank and counsel for the Government showing that negotiations between the attorneys have failed. As such, Century Bank brings the within motion to have the court decide on the rights and legal relations at issue as described at length herein.

///

///

- 1 -

**CENTURY BANK'S MOTION FOR DECLARATORY JUDGMENT**

1    II.    **LEGAL ARGUMENT**

2         A.    **CENTURY BANK'S INTEREST IN THE PROPERTY IS NOT SUBJECT TO**

3              **FORFEITURE BECAUSE IT IS AN INNOCENT OWNER.**

4         The Government's Complaint relies on 21 U.S.C. §881(a)(7), which authorizes forfeiture

5    proceedings against real property that is used to commit and/or to facilitate the commission of a drug

6    felony. 18 U.S.C. §981(a)(1)(A) provides for the forfeiture of real property involved or traceable

7    to a transaction in violation of 18 U.S.C. §1956 and 1957, which in turn deal with "laundering of

8    monetary instruments" and "engaging in monetary transactions in property derived from specified

9    unlawful activity" respectively. Furthermore, 18 U.S.C. §1956 and 1957 both specify Section 846,

10   which prohibits "the attempting or conspiring to distribute and possess with the intent to distribute

11   a controlled substance", as an unlawful activity. Nevertheless, even assuming that the present action

12   was properly brought under 21 U.S.C. §881(a)(7) and 18 U.S.C. §981(a)(1)(A) Century Bank's

13   interest in the property is not subject to forfeiture because Century Bank is an "innocent owner".

14        Both section 881 and section 981 are subject to the standards set forth in the Civil Asset

15   Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983. See *United States v. 144,774 Pounds*

16   *of Blue King Crab*, 410 F.3d 1131. Enacted in 2000, the CAFRA sets forth the procedures used in

17   all civil forfeitures under federal law unless the particular forfeiture statute is specifically exempted

18   in 18 U.S.C. § 983(i)(2). *Id.* at 1134. Neither section 881 nor 981 are exempted under 18 U.S.C. §

19   983(i)(2).

20        Under §983(c), the Government has the initial burden of proving by a preponderance of the

21   evidence that the property is subject to forfeiture. *Id.* Where the Government's theory of forfeiture

22   is that the property was used to facilitate the commission of a crime, "the Government shall establish

23   that there was a substantial connection between the property and the offense." *Id.*; 18 U.S.C.

24   §983(c)(3). More importantly, § 983(d) provides for the "innocent owner" defense to a civil

25   forfeiture action.

26        Title 18 U.S.C.A. §983(d)(1) provides that "An innocent owner's interest in property shall

27   not be forfeited under any civil forfeiture statute". The statute defines an "owner" as "a person with

28   an ownership interest in the specific property sought to be forfeited, including a leasehold, lien,

THARPE & HOWELL
2555 3rd Street, Suite 110
Sacramento, California 95818

- 2 -

1  mortgage, recorded security interest, or valid assignment of an ownership interest…"(emphasis

2  added). *Id.* at §983(d)(6)(A). Furthermore, § 983(d)(3) defines "an "innocent owner" as "a person

3  who, at the time that person acquired the interest in the property (i) was a bona fide purchaser or

4  seller for value . . . ; and (ii) did not know and was reasonably without cause to believe that the

5  property was subject to forfeiture."

6    Accordingly, Century Bank is clearly an "owner" as defined by §983(d)(6)(A)" and is able

7  to maintain the protections afforded it under 18 U.S.C.A. §983, and furthermore, Century Bank is

8  an "innocent owner" as that term is used in 18 U.S.C.A. §983(d)(1), and as such, Century Bank's

9  interest is not subject to forfeiture.

10    **B.** **CENTURY BANK'S INTEREST IN THE PROPERTY HAS PRIORITY**

11      **OVER THE GOVERNMENT'S CLAIMED RIGHT TO FORFEITURE**

12      **BECAUSE ITS LIEN INTEREST WAS FIRST IN TIME.**

13    "In drug forfeiture actions, ownership of property is determined by state law." See *United*

14  *States v. Ranch Located in Young, Arizona*, 50 F.3d 630, 632 (9th Cir. 1995); see also *United States*

15  *v. Yazell*, 382 U.S. 341, 352-53, 15 L. Ed. 2d 404, 86 S. Ct. 500 (1965). Moreover, because the

16  property that is the subject of this forfeiture action is located in Florida, under federal choice of law,

17  Florida state law applies. *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir.

18  2004); see also *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995).

19    The Florida Supreme Court has stated the well-established rule governing priority of lien

20  interests as "first in time is first in right". *Holly Lake Ass'n v. Federal Nat. Mortg. Ass'n*, 660 So.2d

21  266,268 (Fla.1995). The "the first in time is the first in right" rule has been applied and upheld by

22  numerous other courts. *See Walter E. Heller & Co. Southeast, Inc. v. Williams*, 450 So.2d 521, 532

23  (Fla. 3d DCA 1984), *review denied*, 462 So.2d 1108 (Fla.1985); *quoting United States v. City of New*

24  *Britain*, 347 U.S. 81, 85, 74 S. Ct. 367, 370, 98 L.Ed. 520, 525-526 (1954); *United States v. Atlantic*

25  *Municipal Corp.*, 212 F.2d 709 (5th Cir.1954); Similarly, in *National Loan Investors, L.P. v.*

26  *Burgher*, 742 So.2d 406 (Fla. 4th DCA 1999), the court quoted *People's Bank of Jacksonville v.*

27  *Arbuckle*, 82 Fla. 479, 90 So. 458 (1921), where the Florida Supreme Court held that "[t]he

28  recording of [a] mortgage affords notice thereof to all concerned, and gives it priority over all liens

THARPE & HOWELL
2555 3rd Street, Suite 110
Sacramento, California 95818

**CENTURY BANK'S MOTION FOR DECLARATORY JUDGMENT**

1  accruing thereafter." *Id.* at 460 (Emphasis added).

2  Century Bank recorded its mortgage on December 21, 2006. The Government recorded its

3  lis pendens on August 1, 2007. Because Century Bank's Note was recorded earlier in time than the

4  Government's lis pendens, pursuant to Florida state law, any interest of the Government is

5  subordinate and inferior to Century Bank's mortgage and Note. *Sarmiento v. Stockton, Whatley,*

6  *Davin & Co., Inc.*, 399 So. 2d 1057 (Fla. 3rd DCA 1963); *United States v. First Federal Savings and*

7  *Loan Association of St. Petersburg*, 155 So. 2d 192 (Fla. 2nd DCA 1963).

8  Furthermore, although the Government's forfeiture complaint alleges that Michael Arnold

9  participated in a conspiracy to distribute Schedule III and IV controlled substances since "at least

10  2003", it does not allege that Mr. Arnold was indicted or arrested, or that investigation of Mr. Arnold

11  was public knowledge. So, at the time Century Bank issued its Note and recorded its mortgage, no

12  action was pending, no indictments had been issued, and the Government had no interest in the

13  Property. (See Declaration of O'Neill, para. 7.) Thus, Century Bank was a bona fide purchaser for

14  value, with regard to its mortgage interest, because it did not know and was reasonably without cause

15  to believe that the property was or would be subject to forfeiture.

16  Further, Century Bank did not know of any criminal or illegal conduct with regard to the

17  loan transaction or that Mr. Arnold was under investigation for any alleged criminal or illegal

18  conduct. (See Declaration of O'Neill, paras. 5 and 6.) Of note, the Government has not alleged that

19  Century Bank had any wrongdoing in this matter. Certainly, no evidence exists of any wrongdoing

20  by Century Bank. The issue of import is Century Bank's absolute right, as the first in time to record

21  its interest in the property, to foreclose on the Property should Mr. Arnold default on his obligations

22  to pay the Note.

23  **C.    THE COURT SHOULD GRANT THE MOTION FOR DECLARATORY**

24  **RELIEF TO DECLARE THE LEGAL RIGHT OF CENTURY BANK TO**

25  **FORECLOSE ON THE PROPERTY SHOULD THE PURCHASER**

26  **DEFAULT ON HIS OBLIGATION TO PAY THE NOTE.**

27  In a case of actual controversy within its jurisdiction any court of the United States, upon

28  the filing of an appropriate pleading, the court may declare the rights and other legal relations of any

THARPE & HOWELL
2555 3rd Street, Suite 110
Sacramento, California 95818

- 4 -

1  interested party seeking such declaration, whether or not further relief is or could be sought.

2  *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1172 -1173 (9th Cir. 2002)

3       Federal Rule of Civil Procedure Rule 57 provides that "the existence of another adequate

4  remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.  The

5  court may order a speedy hearing of an action for a declaratory judgment and may advance it on the

6  calendar."

7       Five factors should be considered to determine whether a case is appropriate for declaratory

8  judgment:

9      1.    whether the judgment would settle the controversy;

10      2.    whether the declaratory judgment action would serve a useful purpose in

11          clarifying the legal relations at issue;

12      3.    whether the declaratory remedy is being used merely for the purpose of

13          "procedural fencing" or "to provide an arena for a race for res judicata";

14      4.    whether the use of a declaratory action would increase the friction

15          between our federal and state courts and improperly encroach on state

16          jurisdiction; and

17      5.    whether there is an alternative remedy that is better or more effective.
   *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.* 373 F.3d 807, 813 (6th

18          Cir. 2004).

19       Applying the foregoing considerations, first, declaratory relief is proper because the only

20  controversy that exists between Century Bank and the Government is the primacy of Century Bank's

21  rights to the property and what the proper remedy should be if Mr. Arnold defaults on his obligation

22  to pay the Note.  Century Bank's multi-million dollar note should not be at risk while the

23  Government pursues Mr. Arnold for drug trafficking. Second, should the court grant Century Bank's

24  proposed declaratory judgment, Century Bank's legal right to have priority over the Government's

25  claim to forfeiture of the Property will be clarified.  Third, since the Complaint for Forfeiture is

26  presently pending before this court, there is no procedural fencing at issue here.  Fourth, there is no

27  state court action pending so there is no risk for friction between federal and state courts. And fifth,

28  Century Bank has no other alternative remedy in that a summary judgment or adjudication motion

THARPE & HOWELL
2555 3rd Street, Suite 110
Sacramento, California 95818

**CENTURY BANK'S MOTION FOR DECLARATORY JUDGMENT**

1   is used to have the court decide that the Government's claims have no merit as a matter of law.

2   Here, Century Bank does not wish to challenge the Government's right to bring a forfeiture action

3   against the Property as it related to Mr. Arnold's claim of ownership. Century Bank requires only

4   that its rights as the innocent owner and primary lien holder of the Property are protected.

5   **III. CONCLUSION AND PROPOSED DECLARATORY JUDGMENT**

6   For the reasons set forth above, Century Bank respectfully requests the court grant the

7   within motion for declaratory judgment and enter the following orders:

8   1. Century Bank, FSB ("Century Bank") is a federally chartered savings bank and holds

9   the first mortgage ("the Mortgage") on the real property located at 205 SE Spanish Trail, Boca

10   Raton, Florida ("the Property).

11   2. The United States of America ("the Government") instituted a Complaint for

12   Forfeiture and filed a lis pendens against the Property on August 10, 2007.

13   3. The Mortgage on the Property secures a Revolving Promissory Note ("the Note")

14   dated December 19, 2006 for the amount of $5,370,000.00, and is payable in accordance with the

15   terms and conditions of said Note.

16   4. Century Bank's interest in the within Complaint for Forfeiture, stems from its Note,

17   Mortgage and other loan documents, and its interest in the Property is superior to any interest of the

18   Government and all other known Defendants.

19   5. Any alleged violations involving the Property which is or may be subject to forfeiture

20   to the Government occurred without the knowledge, consent or participation of Century Bank.

21   6. Century Bank is an innocent owner as that term is used in 18 U.S.C.A. §983(d)(1)

22   and elsewhere in the United States Code, and because that is so, Century Bank's interest is not

23   subject to forfeiture.

24   7. Century Bank is an "owner" and is able to maintain the protections afforded it under

25   18 U.S.C.A. §983.

26   8. If the Note, Mortgage or loan documents of Century Bank go into default for any

27   reason, Century Bank is entitled to all of its rights and remedies under those documents regardless

28   of who owns legal or equitable title to the Property, and regardless of whether or not the Government

THARPE & HOWELL
2555 3rd Street, Suite 110
Sacramento, California 95818

- 6 -

**CENTURY BANK'S MOTION FOR DECLARATORY JUDGMENT**

1    has completed any forfeiture of the property.

2    9. Additionally but not by limitation, in the event of any default in the Note, Mortgage

3    or loan documents, Century Bank may accrue and collect interest at the highest rate allowable under

4    Florida law with respect to the Government.

5    10. Florida law shall govern in the event of any default under the Note, Mortgage or loan

6    documents, and Century Bank shall bring that action in the Circuit Court in the county in Florida

7    where the property is located.

8    11. Should the Government assume ownership of the property, prior to any default by

9    Michael Arnold, through forfeiture order or otherwise, it shall pay the then current amount due under

10    the Note, Mortgage and other loan documents, including allowable interest, fees and penalties,

11    within 30 days of assuming such ownership. If the Government fails to pay the then current amount

12    due within 30 days, the interest rate shall increase to the highest allowable default rate as defined

13    under Florida law until the total amount outstanding is paid in full and Century Bank shall be entitled

14    to commence immediate foreclosure or any and all other actions allowable under the loan

15    documents.

16    12. Century Bank has expended funds for attorney's fees and costs in defending this

17    matter, which are properly chargeable against the account of its customer, and that Century Bank

18    shall retain the right to have these charges be secured by the Note, Mortgage and loan documents.

19

20

21    Dated: March 12, 2008

                  THARPE & HOWELL

22

23                   By: _____

                       JEFFREY J.A. HINRICHSEN

24                        Attorneys for Third Party Defendant

                       CENTURY BANK, FSB

25

26

27

28

*THARPE & HOWELL*
*2555 3rd Street, Suite 110*
*Sacramento, California 95818*

**CENTURY BANK'S MOTION FOR DECLARATORY JUDGMENT**

**EXHIBIT "A"**

*WC/3 JC*

*SERVICING*

CFN 20060703230
OR BK 21220 PG 0622
RECORDED 12/21/2006 09:20:17
Palm Beach County, Florida
AMT 5,370,000.00
Deed Doc 18,795.00
Intang 10,740.00
Sharon R. Bock, CLERK & COMPTROLLER
Pgs 0622 - 643; (22pgs)

Return To:
CENTURY BANK, F.S.B.

1680 Fruitville Road
Sarasota, FL 34236

This document was prepared by:
Kathy Sokol

CENTURY BANK, F.S.B.
1680 Fruitville Road
Sarasota, FL 34236

—————————————————[Space Above This Line For Recording Data]—————————————————

# MORTGAGE

THIS IS A BALLOON MORTGAGE SECURING A VARIABLE (ADJUSTABLE; RENEGOTIABLE) RATE OBLIGATION. ASSUMING THAT THE INITIAL RATE OF INTEREST WERE TO APPLY FOR THE ENTIRE TERM OF THE MORTGAGE, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY WOULD BE APPROXIMATELY $5,285,544.66 TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE. THE ACTUAL BALANCE DUE UPON MATURITY MAY VARY DEPENDING ON CHANGES IN THE RATE OF INTEREST.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated December 19th, 2006                    ,
together with all Riders to this document.
(B) "Borrower" is
Michael James Arnold, A Single Man

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is CENTURY BANK, F.S.B.

Lender is a FLORIDA CORPORATION
organized and existing under the laws of THE UNITED STATES OF AMERICA

52011535

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3010 1/01

**VMP** -6(FL) (0005).02
Page 1 of 16                    Initials: _MJA_
            VMP Mortgage Forms, Inc.

Lender's address is 1680 Fruitville Road, Sarasota, FL 34236

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated December 19th, 2006
The Note states that Borrower owes Lender
Five Million Three Hundred Seventy Thousand and 00/100                Dollars
(U.S. $5,370,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than January 1st, 2014

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |
| | | Prepayment Penalty |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

52011535

  -6(FL) (0005).02                    Page 2 of 16          Initials: _____          Form 3010  1/01

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the COUNTY          [Type of Recording Jurisdiction]
of Palm Beach                                                      [Name of Recording Jurisdiction]:
Lots 11 & 12, BOCA RATONE POR LA MAR 2ND AMENDED PLAT, according to the Plat thereof on file in Plat Book 20 at Page 7, of the Public Records of Palm Beach County.  TOGETHER WITH the South 15.82 fee to Lot 10, BOCA RATONE POR LA MAR 2ND AMENDED PLAT, according to the Plat thereof on file in Plat Book 20 at Page 7, of the Public Records of Palm Beach County, Florida.  LESS AND EXCEPT THEREFROM the South 37.75 feet of Lot 12, BOCA RATONE POR LA MAR 2ND AMENDED PLAT, according to the Plat thereof on file in Plat Book 20 at Page 7, of the Public Records of Palm Beach County, Florida.  Said lands situate, lying and being in Palm Beach County, Florida.

Parcel ID Number: 06-43-47-28-02-000-0102          which currently has the address of
205 SE Spanish Trail                                                              [Street]
Boca Raton                                                [City], Florida  33432          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

52011535

 -6(FL) (0005).02                    Page 3 of 16          Initials: _____          Form 3010  1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

52011535

-6(FL) (0005).02                    Page 4 of 16              Initials: MJA        Form 3010   1/01

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

52011535



shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

52011535

-6(FL) (0005).02            Page 6 of 16        Initials: _____        Form 3010  1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

52011535

 -6(FL) (0005).02                 Page 7 of 16          Initials: _MSA_          Form 3010   1/01

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

52011535

 -6(FL) (0005).02

Page 8 of 16

Initials: ᴎ𝓢𝓐

Form 3010  1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of



any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

52011535

 -6(FL) (0005).02

Initials: MSA

Form 3010  1/01

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

52011535

 -6(FL) (0005).02

Initials: 

Form 3010  1/01

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

52011535

 

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

52011535



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Melissa Biagiotti_
Melissa Biagiotti

_M. A_ _____ (Seal)
Michael James Arnold          -Borrower

_Molly K Alexander_

333 NE Mizner Blvd, T49
Boca Raton, FL 33431          (Address)

_____ (Seal)
                              -Borrower

                              (Address)

_____ (Seal)
                              -Borrower

                              (Address)

_____ (Seal)
-Borrower

                              _____ (Seal)
                              -Borrower

                              (Address)

                              (Address)

_____ (Seal)
-Borrower

                              _____ (Seal)
                              -Borrower

                              (Address)

                              (Address)

52011535

VMP®-6(FL) (0005).02          Page 16 of 16          Form 3010   1/01

STATE OF FLORIDA,      *Palm Beach*                    County ss:

The foregoing instrument was acknowledged before me this December 19th, 2006            by
Michael James Arnold

who is personally known to me or who has produced *A Drivers License*      as identification.

NOTARY PUBLIC-STATE OF FLORIDA
Morag R. Alexander
Commission # DD524188
Expires: MAR. 01, 2010
Bonded Thru Atlantic Bonding Co., Inc.

Notary Public

52011535

-6(FL) (0005).02                        Page 16 of 16                    Initials: TSA                    Form 3010  1/01

# ADJUSTABLE RATE RIDER
### (1 Year Treasury Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 19th      day of December, 2006   ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
CENTURY BANK, F.S.B.

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:
205 SE Spanish Trail, Boca Raton, FL 33432

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 8.12500          %. The Note
provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates
The interest rate I will pay may change on the first day of January 1st, 2010      ,
and on that day every 12th month thereafter. Each date on which my interest rate could
change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER - ARM 5-2 - Single Family - Fannie Mae/Freddie
Mac UNIFORM INSTRUMENT
Fannie Mae 4-2/5-2/6-2 ARM
Form 3111 1/01

Wolters Kluwer Financial Services
VMP ®-822R (0405).01
Page 1 of 4        Initials: MJA

EXHIBIT "A" cont'd.

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Five and 000/1000                                              percentage points
( 5.000           %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than
10.12500           % or less than 8.12500              %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 14.12500            %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

52011535

Initials: MJA

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

  **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

  To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

  If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

52011535

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
Michael James Arnold      -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                              -Borrower

52011535

VMP®-822R (0405).01              Page 4 of 4                Form 3111 1/01

## ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made 12/19/2006 and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:

205 SE Spanish Trail, Boca Raton, FL  33432

AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/We further covenant and agree as follows:

ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 10.12500 % or less than 8.12500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than Two percentage point(s) (2.00000 %) from the rate of interest I have been paying for the preceding twelve (12) months. My interest rate will never be greater than 14.12500 %. My interest rate will never be less than 8.12500%.

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in the Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Thereof, Trustor has executed this addendum, this 19th day of December , 2006 .

Witness
_Melissa Biagrotti_

Witness
_MoLAGrC ALexANDer_

Borrower Michael James Arnold

Co-Borrower

Loan #52011535

## PREPAYMENT RIDER
### (Multi-State)

This Prepayment Rider is made this 19th of December , 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to CENTURY BANK, F.S.B. (the "Lender") of the same date and covering the property described in the Security Instrument and located at 205 SE Spanish Trail, Boca Raton, FL 33432 (the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is know as a "prepayment". A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment".

**If, within the 36 month period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six month (6) month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_M. Arnold_____(SEAL)    _____(SEAL)
Michael James Arnold

_____(SEAL)    _____(SEAL)

# ORIGINAL

CFN 20070368210
OR BK 21987 PG 1483
RECORDED 08/01/2007 11:55:51
Palm Beach County, Florida
Sharon R. Bock, CLERK & COMPTROLLER
Pgs 1483 - 1485; (3pgs)

1  SCOTT N. SCHOOLS (SCBN 9990)
   United States Attorney

2
   W. DOUGLAS SPRAGUE (CSBN 202121)
3  Acting Chief, Criminal Division

4  STEPHANIE M. HINDS (CSBN 154284)
   Assistant United States Attorney

5
     450 Golden Gate Avenue, Box 36055
6    San Francisco, California 94102-3495
     Telephone: (415) 436-6816
7    Facsimile: (415) 436-6748
     Email: stephanie.hinds@usdoj.gov

8
   Attorneys for Plaintiff

9

10                 UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12

13  UNITED STATES OF AMERICA,              )   Case No.   C 07-3874 MMC
                                           )
14                Plaintiff,               )
                                           )   **NOTICE OF PENDENCY OF ACTION**
15        v.                               )   **(LIS PENDENS)**
                                           )
16  REAL PROPERTY AND IMPROVEMENTS         )
17  LOCATED AT 205 SE SPANISH TRAIL, BOCA  )
    RATON, FLORIDA,                        )
18                                         )
                  Defendant.               )
19  _____   )

20        NOTICE IS HEREBY GIVEN that an action has been commenced in the above-entitled

21  Court pursuant to a Complaint filed by the United States of America on July 27, 2007 to secure

22  the judicial forfeiture of real property and improvements located at 205 SE Spanish Trail, Boca

23  Raton, Florida (APN: 06-43-47-28-02-000-0102). The real property is also known as:

24
          **Lots 11 & 12, BOCA RATONE POR LA MAR 2ND AMENDED PLAT,**
25        **according to the Plat thereof on file in Plat Book 20 at Page 7, of the**
          **Public Records of Palm Beach County. TOGETHER WITH the South**
26        **15.82 fee to Lot 10, BOCA RATONE POR LA.**

27        In the Complaint for Forfeiture, plaintiff alleges that the defendant real property is subject to

28  forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in

1   or traceable to a transaction or attempted transaction in violation of Title 18, United States Code,

2   Section 1956 and 1957 and Title 21, United States Code, Section 881(a)(6).

3        The owner of record to the defendant property is Michael James Arnold.

4

5   Dated: July 31, 2007                    Respectfully submitted,

6                                           SCOTT N. SCHOOLS
                                            United States Attorney,
7

8                                           PATRICIA J. KENNEY
9                                           Assistant United States Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

NOTICE OF PENDENCY OF ACTION (LIS PENDENS)                                2

1                        CERTIFICATE OF SERVICE

2       The undersigned hereby certifies that she is an employee in the Office of the United States

3   Attorney for the Northern District of California and is a person of such age and discretion to be

4   competent to serve papers.  The undersigned further certifies that she caused a copy of NOTICE

5   OF PENDENCY OF ACTION (LIS PENDENS) to be served via certified mail upon the

6   person(s) below at the place(s) and address(es) which is the last known address(es):

7   Century Bank                              Michael James Arnold
    1680 Fruitville Road                      205 SE Spanish Trail
8   Sarasota, FL 34236                        Boca Raton, FL 33432-6232
    Attn: Melody Shimmell
9
10      I declare under penalty of perjury under the laws of the United States of America that the

11  foregoing is true and correct.

12      Executed this 31st day of July, 2007, at San Francisco, California.

13
                                    _Carolyn Jusay_
14                                  CAROLYN JUSAY
                                    Legal Assistant
15                                  Asset Forfeiture Unit

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF PENDENCY OF ACTION (LIS PENDENS)                                        3



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

| | |
|---|---|
| *9th Floor, Federal Building* | *(415) 436-7200* |
| *450 Golden Gate Avenue, Box 36055* | |
| *San Francisco, California 94102-3495* | *FAX:(415) 436-6748* |

February 10, 2008

VIA ELECTRONIC MAIL
Stacey A. Miller
Tharpe & Howell
15250 Ventura Boulevard
Ninth Floor
Sherman Oaks, California 94103
email: smiller@tharpe-howell.com

RE: *United States v. 205 SE Spanish Trail, Boca Raton, Florida*
    Case No. C 07-3874 RMW

Dear Ms. Miller:

I'm in receipt of your letter dated January 29, 2008. At the outset, let me address your contention that I have failed to return your telephone calls. During the past two to three months, our office (actually the building) has been experiencing intermittent problems with the voicemail systems. During that time, some of the tenants in the building, including me, never received messages that callers claimed were left on the voicemail system, and/or messages were inadvertently deleted by the system. I do not recall receiving any telephone calls from you during that time period that was not returned or that we didn't personally have a conversation. To the extent your messages were a victim of our faulty telephone system, I apologize.

With respect to your insistence that the government permit your client to pursue foreclosure on the property should the property owner become delinquent, I cannot agree to that. The government has offered to pay the bank's note upon the forfeiture and sale of the property, or upon the interlocutory sale of the property should the property owner become delinquent on his Note. Indeed, the government and the property owner are currently in discussions regarding an interlocutory sale of the property. If the property owner agrees and the Court approves, the government will undertake to sell the property and seek to pay the bank from the sale proceeds. As part of the government's proposed agreement with the property owner, the owner is required to stay current with his mortgage payments. If he does not, please let me know and the government will file a motion asking the Court that the property be sold immediately because it is a wasting asset. In that way, the bank and the government's interests will be preserved. I hope that your client will reconsider its position.

Very truly yours,

JOSEPH P. RUSSONIELLO
United States Attorney

/s/

STEPHANIE M. HINDS
Assistant United States Attorney

**ORANGE-RIVERSIDE**
600 W. SANTA ANA BLVD.
SANTA ANA, CA 92701
(714) 437-4900

**OXNARD/VENTURA**
OXNARD, CA 93030
(805) 485-2275

**BAY AREA**
1210 S. BASCOM AVENUE
SAN JOSE, CA 95128
(408) 271-0600

**SACRAMENTO**
400 CAPITOL MALL
SACRAMENTO, CA 95814
(916) 449-3995

**FRESNO**
516 WEST SHAW AVENUE
FRESNO CA, 93704
(559)221-2670

LAW OFFICES
# T H A R P E  &  H O W E L L
15250 VENTURA BOULEVARD
NINTH FLOOR
SHERMAN OAKS, CALIFORNIA 91403
(818) 205-9955
FAX (818) 205-9944
Sender's Email Address:
SMiller@Tharpe-Howell.com

**TRI-COUNTIES**
1226 STATE STREET
SANTA BARBARA, CA 93101
(805) 962-4000

**LAS VEGAS**
7878 WEST SAHARA AVE.
LAS VEGAS, NV 89102
(702) 562-3301

**RENO**
955 S. VIRGINIA STREET
RENO, NV 89502
(775) 786-6200

**PHOENIX**
1202 E.. MISSOURI AVENUE
PHOENIX, AZ 85014
(602) 340-1234

**UTAH**
3651 NORTH 100 EAST
PROVO, UT 84604
(801) 375-5554

OUR FILE NO.
21703

January 29, 2008

Stephanie M. Hinds
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
email:  stephanie.hinds@usdoj.gov


Re:    United States of America v. Real Property & Improvements Located at 205 SE
       Spanish Trail, Boca Raton, Florida
       U.S.D.C., Northern District of California – Case No. C 07-3874 RMW


Dear Ms. Hinds:

　　　I have attempted to reach you several times over the past two weeks without success.  Therefore, please allow this letter to continue our discussion regarding the Stipulation you recently circulated regarding resolution of the above matter.

　　　My client is adamant that it will not release its properly negotiated rights under the mortgage documents to foreclose on the property should Mr. Arnold fail to timely make the mortgage payments as outlined in the lending agreements.  My client is particularly concerned that by waiving its foreclose rights, it has no leverage to enforce its agreement.  If Mr. Arnold were to stop making the mortgage payments, my client would be carrying the cost of the loan without any assurance of payoff in the immediate future, as you have indicated that there is no specific and properly capitalized buyer in line to purchase the property at this time.

Stephanie M. Hinds
January 29, 2008
Page 2


    Further, it should be noted that my client has fiduciary responsibilities to its other account holders to protect its solvency and business stability by recouping monies as quickly and at as little a cost a possible.   Therefore, my client cannot agree to your Stipulation as currently phrased.

    In order to obtain my client's signature on the Stipulation, it must not restrict its rights available to it under its mortgage agreement as provided under Florida law, including the right to proceed by default and foreclose if the mortgage payments are not timely made.   Otherwise, the United States will have to agree to step in and make any payments to keep the mortgage current should Mr. Arnold fail to do so.   My client will not finance the United States' proceedings.

    Please let me know within 10 days of this letter if you will agree to modify the Stipulation to reflect the above.   Otherwise, we will proceed to file a Motion for Summary Judgment for a determination that Century Bank holds its mortgage as a good faith lender and that it is entitled to its full contractual rights under that agreement.

    Thank you for your prompt attention to this matter.   I look forward to trying to reach an amenable resolution for the parties.

                Very truly yours,




                STACEY A. MILLER

SAM:ap
G:\Data\APorcellino\FORMS\Letter.sam

Stephanie M. Hinds
January 29, 2008
Page 3


bcc:    Scott McKay (smckay@mckay-law.com)

1

**CERTIFICATE OF SERVICE**

2

3        I am employed in the County of Sacramento, State of California.  I am over the age of
18 and not a party to the within action; my business address is: 2555 3rd Street, Suite 110,
Sacramento, California 95818.

4

5        I certify that on March 12, 2008, I electronically filed the foregoing document described
as **Century Bank, FSB's Motion for Declaratory Judgment; Memorandum of Points and
Authorities**, with the Clerk of the United States District Court for the Northern Division of
California using the CM/ECF system and served the same on the interested parties in this action by
placing a true original/copy thereof enclosed in sealed envelope addressed as follows:

6

7

8        **STEPHANIE M. HINDS**                    **Attorney Representing**
         **Assistant United States Attorney**      **Plaintiff United States of America**
         **450 Golden Gate Avenue**

9        **Box 36055**
         **San Francisco, CA 94102**

10       **Telephone: (415) 436-6816**
         **Facsimile: (415) 436-6748**

11       stephanie.hinds@usdoj.gov

12       **EDWARD W. SWANSON**                      **Attorney Representing**
         **Swanson, McNamara & Haller LLP**        **Michael Arnold**

13       **300 Montgomery Street, Suite 1100**
         **San Francisco, CA 94104**

14       **Telephone: (415) 477-3800**
         **Facsimile: (415) 477-9010**

15

16       ☒        (BY MAIL) I am "readily familiar" with the firm's practice of collection and processing
correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service

17       on that same day with postage thereon fully prepaid at Sacramento, California, in the ordinary course
of business.  I am aware that on motion of the party served, service is presumed invalid if postal

18       cancellation date or postage meter date is more than one day after date of deposit for mailing in
affidavit.

19

20       ❑        (BY PERSONAL DELIVERY) I caused such envelope to be delivered by hand to a
representative of the addressee.

21       ❑        (BY FACSIMILE) I served the foregoing document described above on all interested
parties in this action by sending the document via facsimile pursuant to Rule 2005.  The parties' fax

22       numbers that I used is listed above.

23       ❑        (BY FEDEX)     I caused an envelope to be hand-delivered to a representative of
FEDEX at Sacramento, California; whereupon said envelope is to be delivered by hand to a

24       representative of the addressee on the next business day.

25              Executed on March 12, 2008, at Sacramento, California.

26              I declare under penalty of perjury, under the laws of the State of California that the
foregoing is true and correct.

27
                                          _Kristin Leslie_
28                                        Kristin Leslie

**CENTURY BANK'S MOTION FOR DECLARATORY JUDGMENT**

THARPE & HOWELL
2555 3rd Street, Suite 110
Sacramento, California 95818